**UNITED STATES of America**

v.

**Richard Anthony LEE, Appellant.**

**UNITED STATES of America**

v.

**Ralph LEE, Appellant.**

**Nos. 72–1711, 72–1712.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 13, 1973.

Decided Nov. 16, 1973.

Rehearing Denied Dec. 17, 1973.

---

Anthony Z. Roisman, Washington, D. C. (appointed by this Court), for appellant in No. 72–1711.

Ralph S. Spritzer, Philadelphia, Pa. (appointed by this Court), for appellant in No. 72–1712.

David G. Larimer, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty. and John A. Terry, Asst. U. S. Atty., were on the brief for appellee. James E. Sharp, Asst. U. S. Atty., also entered an appearance for appellee.

Before TAMM and ROBB, Circuit Judges, and JOHN H. PRATT,* United States District Judge for the United States District Court for the District of Columbia.

PER CURIAM:

On Friday evening, October 1, 1971, Linda Elizabeth Ammidown was raped and shot twice in the head and left to die under the East Capitol Street Bridge. On April 12, 1972, a six-count indictment arising out of this murder was filed in which appellants, Richard Anthony (Tony) Lee [1] and his brother, Ralph Lee, were charged with conspiracy to commit murder in count one,[2] first-degree premeditated murder in count two,[3] first-degree felony murder committed while perpetrating the crime of kidnapping in count five,[4] first-degree felony murder committed while perpetrating the crime of rape in count three,[5] kidnapping in count six,[6] and rape in count four.[7] Trial commenced in the District Court on May 15, 1972, and on May 24 the jury found Tony Lee guilty on all counts; Ralph Lee was found guilty of conspiracy to commit murder and not guilty of the other charges. On June 21, 1972, the Court sentenced Tony Lee to death by electrocution for the convictions of first-degree premeditated murder and the two counts of felony murder. He was also sentenced to fifteen years to life imprisonment for rape, fifteen years to life for

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Throughout the trial appellant Richard Anthony Lee was referred to as Tony Lee. To avoid confusion we shall also refer to him in that manner.

2. 22 D.C.Code § 105a.

3. 22 D.C.Code § 2401.

4. *Id.*

5. *Id.*

6. 22 D.C.Code § 2101.

7. 22 D.C.Code § 2801.

kidnapping, and twenty months to five years for conspiracy, these sentences to run consecutively. Appellant Ralph Lee was sentenced the same day to twenty months to five years for conspiracy to commit murder. Both appellants appeal from those judgments on several grounds hereinafter set forth.[8] We affirm.

### The Evidence

Because of the nature and extent of appellants' grounds for reversal, a brief review of the evidence is hereinafter set forth.[9]

With respect to the rape and murder of the decedent, external examination showed that death was caused by two bullet wounds to the right side of the head, just behind the right ear. There were abrasions on both of the victim's bare buttocks, and there was also an amount of dirt and gravel embedded in the buttocks. Examination of the external genitalia of the victim revealed the presence of intact sperm. Because of the manner in which the blood from Mrs. Ammidown's head had been sprayed evenly on her thighs and because this blood was not smeared, the District of Columbia Chief Medical Examiner testified that Mrs. Ammidown had been inseminated before she was shot and that she must have been in a sitting position when she was shot.

William Preston "Dutch" Johnson, who, with Robert L. Ammidown, decedent's husband, was a principal Government witness, testified at considerable length concerning the origin of the plan to murder decedent which implicated both appellants. Johnson gave the details of a meeting in mid-August, 1971, with appellant Ralph Lee, when the latter first broached the matter of killing "someone's" wife, and subsequent meetings with appellant, Tony Lee, Ralph's brother, concerning the planning of the proposed killing first scheduled to take

place at the Flagship Restaurant and later at the Hecht Company's parking lot in Arlington for a particular night, which plans were postponed. Later in the same month of August, Johnson accompanied both appellants to Southern Maryland, where Tony Lee referred to the man who "wanted his wife killed" and it was at this time that the name "Ammidown" was first mentioned by Tony Lee in talking to Ralph Lee. Several weeks later, Johnson read of Linda Ammidown's murder on October 1. After confronting Tony Lee with the information which Lee described as "impossible," Johnson attempted to extort money from Tony Lee and through Lee from Ammidown. Tony Lee then suddenly disappeared and Johnson's subsequent efforts to deal directly with Ammidown by calling him at his Job Corps office led, with the help of skillful police work, in which Sgt. John J. Moriarity played a leading role, to the arrest of Johnson and certain others upon charges of extortion.

Robert L. Ammidown, the chief Government witness, gave a lengthy account of his role in the murder of his wife. Starting with a description of a deteriorating marital situation which was exacerbated by his wife's control of their property and Ammidown's affair with another woman, he recounted in detail his first meeting with Tony Lee two years prior to the murder, their numerous subsequent meetings concerning Tony Lee's need of funds for investment in an old hotel at Wicomico, Maryland, and Ammidown's unsuccessful efforts to assist him, which culminated in the conspiracy to kill Ammidown's wife, which Tony Lee agreed to arrange. On the evening of the murder, October 1, Ammidown, after making prior arrangements with Tony Lee specific as to time, place and details of the prospective encounter with Tony Lee, dined with his wife at the Flagship Restaurant and while leaving the restaurant parking lot,

8. A companion case, United States v. Ammidown, Nos. 72–1694 and 72–1695, is presently pending before this Court.

9. A very detailed summary of the evidence is contained in Government's Brief pp. 2–21.

was held up by Tony Lee at gun point. Tony Lee then forced his way into the car which was driven to a point near the East Capitol Bridge, took Linda Ammidown out of the car to a point near the river, and returned to the car after raping her. Lee left the car again and shortly thereafter Ammidown heard a pistol shot, saw Tony Lee running away in the darkness, and ran to his wife now dead or dying. Ammidown then drove to a nearby gas station and reported the crime. All of the foregoing acts took place by prearrangement with Tony Lee and the purpose of the rape was to lend plausibility to the report that Ammidown and his wife were victims of a criminal abduction.

Previous to his testimony at trial, Ammidown, as a result of Johnson's arrest for extortion on October 17 and his mention of Tony Lee, had partially admitted his complicity in the murder. At that time he stated Lee had found out about his extra-marital affair and was blackmailing him and that the purpose of the murder was to obtain sufficient funds to buy the hotel at Wicomico for Lee. At trial, Ammidown admitted that this story was a fabrication.

Tony Lee, in his own defense, admitted his previous associations with Ammidown in connection with efforts to obtain financing of several business ventures but denied ever discussing the killing of Linda Ammidown with her husband or anyone else. He relied principally on an unsupported alibi which placed him in Southern Maryland at the precise time of the killing and presented two character witnesses as to his reputation for peace and good order and truth and veracity. Ralph Lee did not testify and presented no evidence in his defense.

From a careful reading of the entire transcript, we are satisfied that there was overwhelming evidence proving beyond a reasonable doubt the guilt of both appellants.

*The Issues*

Counsel have raised several issues on appeal: challenges to the alleged inconsistent and illegal jury verdict, the prosecutor's allegedly prejudicial closing argument, the consecutive sentences imposed, the evidentiary rulings which allegedly denied effective assistance of counsel, the instructions on conspiracy, the alleged participation of the trial court in the prosecutorial function and his failure to recuse, and the validity of the death sentence imposed on Tony Lee in light of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Only the latter two issues require comment. The arguments otherwise made are without merit, being either frivolous or unsupported by applicable authority. The contentions, however, have been accorded full consideration by the Court. *See* Local Rule 13(c).

■ The allegations of alleged improper participation in the prosecutorial function and failure to recuse have been considered carefully by the Court. The Court has given attention to the entire trial record and to the specific objections made in the context of such record. Upon full consideration, it is our conclusion that the defendants were fully accorded their rights to a fair trial and that the experienced trial court judge presided in an impartial manner and that appellants were accorded a fair trial. Accordingly, we find no substantial error in the trial proceedings.

■ The only other matter relating to the trial judge's conduct of the trial concerns his advice to the jury in his charge that if it found Tony Lee guilty of murder and left the sentencing to him, he would impose the death penalty against Tony Lee. (Tr. 995–96) Such a statement, while somewhat unusual, is under the circumstances of this case at most harmless error, particularly in light of the overwhelming evidence against this appellant. See Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174,

33 L.Ed.2d 1 (1972); Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed. 2d 340 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).[10]

The obvious claim that such a statement prejudices Tony Lee's right to a fair trial would appear to rest upon two bases: (1) Did the statement influence the jury in its deliberations on the issue of guilt or innocence—a matter within the sole province of the jury? If so, the jury's function was invaded by the trial judge and the appellant Tony Lee did not receive a fair trial. (2) Could such a statement have caused the jury's inability to agree as to punishment with the result that it, in effect, was imposing the death sentence rather than the judge?

■ With respect to the question whether the statement influenced the jury in deciding the question of guilt or innocence, an examination of the charge in its entirety shows clearly that on repeated occasions the Court was careful to delineate the respective and separate functions of the Court and jury.[11] Based on the totality of the rather lengthy charge, it cannot seriously be claimed that the jury had any doubts as to its function, nor is it reasonable to conclude that the Court's brief statement as to the punishment it would impose in the event of the jury's inability to agree affected in any way its deliberations on the central issue of appellant Tony Lee's guilt concerning which the evidence was overwhelming. See United States v. Pittman, 441 F.2d 1098, 1099–1100 (9th Cir. 1971); United States v. Lauer, 287 F.2d 633, 635–636 (7th Cir.),

cert. denied, 368 U.S. 818, 82 S.Ct. 34, 7 L.Ed.2d 24 (1961); United States v. Allied Stevedoring Corp., 241 F.2d 925, 934 (2d Cir.), cert. denied, 353 U.S. 984, 77 S.Ct. 1282, 1 L.Ed.2d 1143 (1957).

■ Turning to the question whether the Court's statement might well have affected the jury in its deliberations as to punishment and caused its inability to agree, the answer, while not so easily obtained, is just as clear. Counsel for defendant argued with some force that, in failing to agree, the jury knew it was, in effect, ordering the death penalty. In this connection, it very well may have been that one or more members of the jury, all originally inclined to recommend life imprisonment, may have been so influenced by the Court's statement that these individual jurors changed their position with the result that the jury previously unanimous was unable to agree on punishment and left to the Court the responsibility of sentence. The short answer to this claim of prejudice is the decision of the Supreme Court on June 29, 1972 in Furman v. Georgia, *supra,* outlawing the death penalty as constituting cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. The trial judge's statement was made on May 24, 1972 and the defendant was sentenced on June 21, 1972, both dates being prior to the Supreme Court's decision. In other words, the statement, if error, was harmless because no prejudice resulted therefrom.

■ Finally, appellant Tony Lee challenges his sentence to death by electrocution for three counts of first-degree murder (counts 2, 3 and 5). He claims

---

10. Those cases involved constitutional errors which were found harmless in the light of the overwhelming evidence against the defendant. That strict test has been met in this case where the Court should apply the harmless error doctrine because a mere nonconstitutional error is alleged. The harmless error doctrine permits the Court to disregard any nonconstitutional error which does not affect the substantial rights of the defendant. 28 U.S.C. § 2111; Fed.R.Crim. P. 52(a).

11. References to the jury's function as the sole judge of the facts appear repeatedly. Tr. 931–32, 933–34, 945, 946, 952, 957, 968, 969–70, 971, 973, 975, 976, 978–80, 985, 991. References to the Court's role in giving instructions on matters of law also are numerous. Tr. 931–32, 949, 953–54, 958–59, 959–60, 961, 963, 964, 967, 970, 971, 973, 975, 981, 983, 985, 990, 991.

that imposition of the death sentence cannot stand after Furman v. Georgia, *supra*, which was decided after his sentencing. In the light of *Furman* the Government has recognized that a sentence of death under 22 D.C.Code § 2404 is illegal and has suggested that No. 72–1711 be remanded to the District Court for resentencing only as to Tony Lee's three convictions for first-degree murder. The Court agrees.

Accordingly, these cases are affirmed in all respects and No. 72–1711 is remanded for resentencing.

It is so ordered.