# WHALEN *v.* UNITED STATES

No. 78–5471.   Argued November 27, 28, 1979—Decided April 16, 1980

STEWART, J., delivered the opinion of the Court, in which BRENNAN, MARSHALL, POWELL, and STEVENS, JJ., joined. WHITE, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 695. BLACKMUN, J., filed an opinion concurring in the judgment, *post*, p. 696. REHNQUIST, J., filed a dissenting opinion, in which BURGER, C. J., joined, *post*, p. 699.

*Silas J. Wasserstrom* argued the cause for petitioner. With him on the briefs were *William J. Mertens* and *W. Gary Kohlman.*

*Deputy Solicitor General Frey* argued the cause for the United States. With him on the brief were *Solicitor General McCree, Assistant Attorney General Heymann, Allan A. Ryan, Jr., Jerome M. Feit,* and *Elliott Schulder.*

MR. JUSTICE STEWART delivered the opinion of the Court.

After a jury trial, the petitioner was convicted in the Superior Court of the District of Columbia of rape, and of killing the same victim in the perpetration of rape. He was sentenced to consecutive terms of imprisonment of 20 years to life for first-degree murder, and of 15 years to life for rape. The District of Columbia Court of Appeals affirmed the convictions and the sentences. 379 A. 2d 1152.[1] We brought

---

[1] The jury also convicted the petitioner of other felonies, but these convictions were set aside by the District of Columbia Court of Appeals, ex-

the case here to consider the contention that the imposition of cumulative punishments for the two offenses was contrary to federal statutory and constitutional law. 441 U. S. 904.

## I

Under the laws enacted by Congress for the governance of the District of Columbia, rape and killing a human being in the course of any of six specified felonies, including rape, are separate statutory offenses. The latter is a species of first-degree murder, but, as is typical of such "felony murder" offenses, the statute does not require proof of an intent to kill. D. C. Code § 22–2401 (1973). It does require proof of a killing and of the commission or attempted commission of rape or of one of five other specified felonies, in the course of which the killing occurred. *Ibid.* A conviction of first-degree murder is punishable in the District of Columbia by imprisonment for a term of 20 years to life. § 22–2404.[2] Forcible rape of a female is punishable by imprisonment for any term of years or for life. § 22–2801.

It is the petitioner's position that his sentence for the offense of rape must be vacated because that offense merged for purposes of punishment with the felony-murder offense, just as, for example, simple assault is ordinarily held to merge into the offense of assault with a dangerous weapon. See *Waller* v. *United States,* 389 A. 2d 801, 808 (D. C. 1978). The District of Columbia Court of Appeals disagreed, finding that "the societal interests which Congress sought to protect by enactment [of the two statutes] are separate and distinct,"

---

cept for a second-degree murder conviction upon which the petitioner had received a concurrent sentence. The sentence itself was vacated by the appellate court.

[2] The statute also provides for a sentence of death upon conviction for first-degree murder, but that provision has been held to be unconstitutional. See *United States* v. *Stokes,* 365 A. 2d 615, 616, n. 4 (D. C. 1976); *United States* v. *Lee,* 160 U. S. App. D. C. 118, 123, 489 F. 2d 1242, 1247 (1973).

and that "nothing in th[e] legislation . . . suggest[s] that Congress intended" the two offenses to merge. 379 A. 2d, at 1159. That construction of the legislation, the petitioner argues, is mistaken, and he further argues that, so construed, the pertinent statutes impose on him multiple punishments for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment. Cf. *North Carolina* v. *Pearce,* 395 U. S. 711.

If this case had come here from a United States court of appeals, we would as a matter of course first decide the petitioner's statutory claim, and, only if that claim were rejected, would we reach the constitutional issue. See *Simpson* v. *United States,* 435 U. S. 6, 11–12. But this case comes from the District of Columbia Court of Appeals, and the statutes in controversy are Acts of Congress applicable only within the District of Columbia. In such cases it has been the practice of the Court to defer to the decisions of the courts of the District of Columbia on matters of exclusively local concern. See *Pernell* v. *Southall Realty,* 416 U. S. 363, 366; see also *Griffin* v. *United States,* 336 U. S. 704, 717–718; *Fisher* v. *United States,* 328 U. S. 463, 476. This practice has stemmed from the fact that Congress, in creating the courts of the District of Columbia and prescribing their jurisdiction, "contemplate[d] that the decisions of the District of Columbia Court of Appeals on matters of local law—both common law and statutory law—will be treated by this Court in a manner similar to the way in which we treat decisions of the highest court of a State on questions of state law." *Pernell* v. *Southall Realty,* 416 U. S., at 368 (footnote omitted).

But it is clear that the approach described in the *Pernell* opinion is a matter of judicial policy, not a matter of judicial power. Acts of Congress affecting only the District, like other federal laws, certainly come within this Court's Art. III jurisdiction, and thus we are not prevented from reviewing the decisions of the District of Columbia Court of Appeals interpreting those Acts in the same jurisdictional sense that we

are barred from reviewing a state court's interpretation of a state statute. *Ibid.* Cf. *Mullaney* v. *Wilbur,* 421 U. S. 684, 691; *Scripto, Inc.* v. *Carson,* 362 U. S. 207, 210; *Murdock* v. *Memphis,* 20 Wall. 590, 632–633.

In this case we have concluded that the customary deference to the District of Columbia Court of Appeals' construction of local federal legislation is inappropriate with respect to the statutes involved, for the reason that the petitioner's claim under the Double Jeopardy Clause cannot be separated entirely from a resolution of the question of statutory construction. The Fifth Amendment guarantee against double jeopardy protects not only against a second trial for the same offense, but also "against multiple punishments for the same offense," *North Carolina* v. *Pearce, supra,* at 717 (footnote omitted). But the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized. See *Gore* v. *United States,* 357 U. S. 386, 390; *id.,* at 394 (Warren, C. J., dissenting on statutory grounds); *Bell* v. *United States,* 349 U. S. 81, 82; *Ex parte Lange,* 18 Wall. 163, 176; see also *Brown* v. *Ohio,* 432 U. S. 161, 165; *United States* v. *Universal C. I. T. Credit Corp.,* 344 U. S. 218; *Blockburger* v. *United States,* 284 U. S. 299; *Ebeling* v. *Morgan,* 237 U. S. 625.

It is not at all uncommon, for example, for Congress or a state legislature to provide that a single criminal offense may be punished both by a monetary fine and by a term of imprisonment. In that situation, it could not be seriously argued that the imposition of both a fine and a prison sentence in accordance with such a provision constituted an impermissible punishment. But if a penal statute instead provided for a fine *or* a term of imprisonment upon conviction, a court could not impose both punishments without running afoul of the double jeopardy guarantee of the Constitution. See *Ex parte Lange, supra,* at 176. Cf. *Bozza* v. *United States,* 330 U. S. 160, 167. In the present case, therefore, if Congress has not authorized

cumulative punishments for rape and for an unintentional killing committed in the course of the rape, contrary to what the Court of Appeals believed, the petitioner has been impermissibly sentenced. The dispositive question, therefore, is whether Congress did so provide.

The Double Jeopardy Clause at the very least precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so. The Fifth Amendment guarantee against double jeopardy embodies in this respect simply one aspect of the basic principle that within our federal constitutional framework the legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the Congress. See *United States* v. *Wiltberger,* 5 Wheat. 76, 95; *United States* v. *Hudson & Goodwin,* 7 Cranch 32, 34.[3] If a federal court exceeds its own authority by imposing multiple punishments not authorized by Congress, it violates not only the specific guarantee against double jeopardy, but also the constitutional principle of separation of powers in a manner that trenches particularly harshly on individual liberty.[4]

---

[3] This is not to say that there are not constitutional limitations upon this power. See, *e. g., Coker* v. *Georgia,* 433 U. S. 584; *Roe* v. *Wade,* 410 U. S. 113, 164; *Stanley* v. *Georgia,* 394 U. S. 557, 568; *Loving* v. *Virginia,* 388 U. S. 1, 12; *Robinson* v. *California,* 370 U. S. 660, 666–667.

[4] Although the courts of the District of Columbia were created by Congress pursuant to its plenary Art. I power to legislate for the District, see Art. I, § 8, cl. 17; D. C. Code § 11–101 (2) (1973), and are not affected by the salary and tenure provisions of Art. III, those courts, no less than other federal courts, may constitutionally impose only such punishments as Congress has seen fit to authorize.

The Court has held that the doctrine of separation of powers embodied in the Federal Constitution is not mandatory on the States. *Dreyer* v. *Illinois,* 187 U. S. 71, 84. See *Mayor of Philadelphia* v. *Educational Equality League,* 415 U. S. 605, 615, and n. 13; *Sweezy* v. *New Hampshire,* 354 U. S. 234, 255; *id.,* at 255, 256–257 (Frankfurter, J., concurring in result). It is possible, therefore, that the Double Jeopardy Clause does not, through the Fourteenth Amendment, circumscribe the penal authority

Because we have concluded that the District of Columbia Court of Appeals was mistaken in believing that Congress authorized consecutive sentences in the circumstances of this case, and because that error denied the petitioner his constitutional right to be deprived of liberty as punishment for criminal conduct only to the extent authorized by Congress, we reverse the judgment of the Court of Appeals.

## II

As has already been noted, rape and the killing of a person in the course of rape in the District of Columbia are separate statutory offenses for which punishments are separately provided. Neither statute, however, indicates whether Congress authorized consecutive sentences where both statutes have been offended in a single criminal episode. Moreover, the legislative history of those specific penal provisions sheds no light on that question.[5] The issue is resolved, however, by an-

---

of state courts in the same manner that it limits the power of federal courts. The Due Process Clause of the Fourteenth Amendment, however, would presumably prohibit state courts from depriving persons of liberty or property as punishment for criminal conduct except to the extent authorized by state law.

[5] Before 1962, conviction of first-degree murder in the District of Columbia led to a mandatory sentence of death by hanging. See Act of Mar. 3, 1901, § 801, 31 Stat. 1321. Accordingly, the question did not arise whether the sentence for another felony could run consecutively to that for first-degree murder. In 1962 Congress replaced the mandatory death penalty with the present language of D. C. Code § 22–2404 (1973), which allows, as an alternative to a penalty of death, a sentence of 20 years to life imprisonment. Pub. L. 87–423, 76 Stat. 46. Congress did not, however, address the matter of consecutive sentences in this amendatory legislation.

The parties in the present case are in agreement that Congress intended a person convicted of felony murder to be subject to the same penalty as a person convicted of premeditated murder, see, e. g., 108 Cong. Rec. 4128–4129 (1962) (remarks of Sen. Hartke), and subject to more severe punishment than persons convicted of second-degree murder, see S. Rep. No. 373, 87th Cong., 1st Sess., 2 (1961); H. R. Rep. No. 677, 87th Cong., 1st Sess., 2 (1961). The parties disagree as to whether the consecutive sentences in

other statute, enacted in 1970. That statute is § 23–112 of the District of Columbia Code (1973), and it provides as follows:

"A sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides otherwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction, or (2) *arises out of the same transaction and requires proof of a fact which the other does not.*" (Emphasis added.)

Although the phrasing of the statute is less than felicitous, the message of the italicized clause, we think, is that multiple punishments cannot be imposed for two offenses arising out of the same criminal transaction unless each offense "requires proof of a fact which the other does not." The clause refers, of course, to a rule of statutory construction stated by this Court in *Blockburger* v. *United States,* 284 U. S. 299, and consistently relied on ever since to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively.[6] The assumption

this case are in accord with that congressional intent. The petitioner argues that if a consecutive sentence for rape were permitted, he would be punished more severely than if he had committed premeditated murder. The Government counters that the relevant comparison is with the sentences permitted for premeditated murder plus rape, which can be consecutive. Likewise, the Government argues that since consecutive sentences would be permissible for second-degree murder and rape, such sentences should be permitted here to avoid punishing felony murder and rape less harshly. In our view of this case, this controversy need not now be resolved.

[6] The Government would read D. C. Code § 23–112 to mean that courts may ignore the *Blockburger* rule and freely impose consecutive sentences "whether or not" the statutory offenses are different under the rule. While this may be a permissible literal reading of the statute, it would lead to holding that the statute authorizes consecutive sentences for all greater and lesser included offenses—an extraordinary view that the Government

underlying the rule is that Congress ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the "same offense," they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent. In the *Blockburger* case the Court held that "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.*, at 304. See also *Brown* v. *Ohio,* 432 U. S., at 166; *Iannelli* v. *United States,* 420 U. S. 770; *Gore* v. *United States,* 357 U. S. 386.

The legislative history rather clearly confirms that Congress intended the federal courts to adhere strictly to the *Blockburger* test when construing the penal provisions of the District of Columbia Code. The House Committee Report expressly disapproved several decisions of the United States Court of Appeals for the District of Columbia Circuit that had not allowed consecutive sentences notwithstanding the fact that the offenses were different under the *Blockburger* test. See H. R. Rep. No. 91–907, p. 114 (1970). The Report restated the general principle that "whether or not consecutive sentences may be imposed depends on the intent of Congress." *Ibid.* But "[s]ince Congress in enacting legislation rarely specifies its intent on this matter, the courts have long adhered to the rule that Congress did intend to permit consecutive sentences . . . when each offense " 'requires proof of a fact which the other does not,' " *ibid.,* citing *Blockburger* v. *United States, supra,* and *Gore* v. *United States, supra.* The Com-

---

itself disavows. Such an improbable construction of the statute would, moreover, be at odds with the evident congressional intention of requiring federal courts to adhere to the *Blockburger* rule in construing the penal provisions of the District of Columbia Code. See *infra,* this page and 693.

mittee Report observed that the United States Court of Appeals had "retreated from this settled principle of law" by requiring specific evidence of congressional intent to allow cumulative punishments, H. R. Rep. No. 91–907, at 114, and the Report concluded as follows:

> "To obviate the need for the courts to search for legislative intent, section 23–112 clearly states the rule for sentencing on offenses arising from the same transaction. For example, a person convicted of entering a house with intent to steal and stealing therefrom shall be sentenced consecutively on the crimes of burglary and larceny unless the judge provides to the contrary."

We think that the only correct way to read § 23–112, in the light of its history and its evident purpose, is to read it as embodying the *Blockburger* rule for construing the penal provisions of the District of Columbia Code. Accordingly, where two statutory offenses are not the same under the *Blockburger* test, the sentences imposed "shall, unless the court expressly provides otherwise, run consecutively." [7] And where the offenses are the same under that test, cumulative sentences are not permitted, unless elsewhere specially authorized by Congress.

In this case, resort to the *Blockburger* rule leads to the conclusion that Congress did not authorize consecutive sentences for rape and for a killing committed in the course of the rape, since it is plainly not the case that "each provision requires proof of a fact which the other does not." A conviction for

---

[7] There may be instances in which Congress has not intended cumulative punishments even for offenses that are different under the general provision contained in § 23–112. For example, in this case the District of Columbia Court of Appeals vacated the petitioner's sentence for second-degree murder, for the reason that, in the court's view, second-degree murder is a lesser included offense of first-degree felony murder, notwithstanding the fact that each offense requires proof of an element that the other does not. The correctness of the Court of Appeals' ruling in this regard is not an issue in this case.

killing in the course of a rape cannot be had without proving all the elements of the offense of rape. See *United States* v. *Greene*, 160 U. S. App. D. C. 21, 34, 489 F. 2d 1145, 1158 (1973). Cf. *Harris* v. *Oklahoma*, 433 U. S. 682, 682–683. The Government contends that felony murder and rape are not the "same" offense under *Blockburger*, since the former offense does not in all cases require proof of a rape; that is, D. C. Code § 22–2401 (1973) proscribes the killing of another person in the course of committing rape *or* robbery *or* kidnaping *or* arson, etc. Where the offense to be proved does not include proof of a rape—for example, where the offense is a killing in the perpetration of a robbery—the offense is of course different from the offense of rape, and the Government is correct in believing that cumulative punishments for the felony murder and for a rape would be permitted under *Blockburger*. In the present case, however, proof of rape is a necessary element of proof of the felony murder, and we are unpersuaded that this case should be treated differently from other cases in which one criminal offense requires proof of every element of another offense. There would be no question in this regard if Congress, instead of listing the six lesser included offenses in the alternative, had separately proscribed the six different species of felony murder under six statutory provisions. It is doubtful that Congress could have imagined that so formal a difference in drafting had any practical significance, and we ascribe none to it.[8] To the extent that the Government's argument persuades us that the matter is not entirely free of doubt, the doubt must be resolved in favor of lenity. See *Simpson* v. *United States*, 435 U. S. 6, 14–15; see also n. 10, *infra*.

---

[8] Contrary to the view of the dissenting opinion, we do not in this case apply the *Blockburger* rule to the facts alleged in a particular indictment. *Post*, at 708–712. We have simply concluded that, for purposes of imposing cumulative sentences under D. C. Code § 23–112, Congress intended rape to be considered a lesser offense included within the offense of a killing in the course of rape.

Congress is clearly free to fashion exceptions to the rule it chose to enact in § 23–112. A court, just as clearly, is not. Accordingly, notwithstanding the arguments advanced by the Government in favor of imposing consecutive sentences for felony murder and for the underlying felony, we do not speculate about whether Congress, had it considered the matter, might have agreed.[9] It is sufficient for present purposes to observe that a congressional intention to change the general rule of § 23–112 for the circumstances here presented nowhere clearly appears. It would seriously offend the principle of the separation of governmental powers embodied in the Double Jeopardy Clause of the Fifth Amendment if this Court were to fashion a contrary rule with no more to go on than this case provides.[10]

For the foregoing reasons, the judgment of the District of Columbia Court of Appeals is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE WHITE, concurring in part and concurring in the judgment.

Because the District of Columbia Court of Appeals did not take account of § 23–112 of the District of Columbia Code, this is one of those exceptional cases in which the judgment of that court is not entitled to the usual deference.

---

[9] See n. 5, *supra.*

[10] This view is consistent with the settled rule that " 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity,' " *United States* v. *Bass,* 404 U. S. 336, 347, quoting *Rewis* v. *United States,* 401 U. S. 808, 812. See *Simpson* v. *United States,* 435 U. S. 6; *Ladner* v. *United States,* 358 U. S. 169; *Bell* v. *United States,* 349 U. S. 81. As the Court said in the *Ladner* opinion: "This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." 358 U. S., at 178.

*Pernell* v. *Southall Realty,* 416 U. S. 363, 369 (1974). This conclusion, in my opinion, need not rest on any constitutional considerations.

I agree for the reasons given by the Court that in light of § 23–112 and its legislative history, the court below erred in holding that Congress intended to authorize cumulative punishments in this case. But as I see it, the question is one of statutory construction and does not implicate the Double Jeopardy Clause. Had Congress authorized cumulative punishments, as the District of Columbia Court of Appeals held in this case, imposition of such sentences would not violate the Constitution. I agree with MR. JUSTICE BLACK-MUN and MR. JUSTICE REHNQUIST in this respect.

MR. JUSTICE BLACKMUN, concurring in the judgment.

I join the judgment of the Court and much of its opinion. I write separately primarily to state my understanding of the effect, or what should be the effect, of the Court's holding on general double jeopardy principles.

(1) I agree with the Court that it would be inappropriate in this case to accord complete deference to the District of Columbia Court of Appeals' construction of the local legislation at issue. In addition to the reasons offered in the Court's opinion, *ante,* at 688–689, I would point out that the conclusions of the Court of Appeals concerning the intent of Congress in enacting the felony-murder statute were unsupported by appropriate references to the legislative history. Moreover, that court ignored the effect of § 23–112 of the District of Columbia Code, which I have concluded is dispositive of this case. I view the case, therefore, as one falling within the class of " 'exceptional situations where egregious error has been committed.' " *Pernell* v. *Southall Realty,* 416 U. S. 363, 369 (1974), quoting from *Griffin* v. *United States,* 336 U. S. 704, 718 (1949), and *Fisher* v. *United States,* 328 U. S. 463, 476 (1946). Where such an error has been com-

mitted, this Court is barred neither by Art. III nor past practice from overruling the courts of the District of Columbia on a question of local law. *Pernell,* 416 U. S., at 365–369.

(2) I agree with the Court that "the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." *Ante,* at 688. I read the opinions cited by the Court in support of that proposition, however, as pronouncing a broader and more significant principle of double jeopardy law. The *only* function the Double Jeopardy Clause serves in cases challenging multiple punishments is to prevent the prosecutor from bringing more charges, and the sentencing court from imposing greater punishments, than the Legislative Branch intended. It serves, in my considered view, nothing more. "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown* v. *Ohio,* 432 U. S. 161, 165 (1977).[1]

Dicta in recent opinions of this Court at least have suggested, and I now think wrongly, that the Double Jeopardy Clause may prevent the imposition of cumulative punishments in situations in which the Legislative Branch *clearly intended* that multiple penalties be imposed for a single criminal transaction. See *Simpson* v. *United States,* 435 U. S.

---

[1] The Court in *Brown* cited the following decisions in support of its observations concerning the role of the Double Jeopardy Clause in multiple punishment cases: *Gore* v. *United States,* 357 U. S. 386 (1958); *Bell* v. *United States,* 349 U. S. 81 (1955); and *Ex parte Lange,* 18 Wall. 163 (1874). See also *Ashe* v. *Swenson,* 397 U. S. 436, 460, n. 14 (1970) (BRENNAN, J., concurring); M. Friedland, Double Jeopardy 205, 212 (1969); Westen & Drubel, Toward a General Theory of Double Jeopardy, 1978 S. Ct. Rev. 81, 112–113, 158–159; Note, Twice in Jeopardy, 75 Yale L. J. 262, 302–313 (1965).

6, 11–13 (1978); *Jeffers* v. *United States,* 432 U. S. 137, 155 (1977) (plurality opinion). I believe that the Court should take the opportunity presented by this case to repudiate those dicta squarely, and to hold clearly that the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. I must concede that the dicta that seemingly support a contrary view have caused confusion among state courts that have attempted to decipher our pronouncements concerning the Double Jeopardy Clause's role in the area of multiple punishments.[2]

(3) Finally, I agree with the Court that § 23–112 expresses Congress' intent not to authorize the imposition of consecutive sentences in cases in which the two offenses involved do not each require proof of a fact that the other does not. *Ante,* at 690–693. The question then remains whether the crimes of rape and felony murder based upon that rape each require proof of a fact that the other does not. I would agree that they do not, and for the reasons stated by the Court, *ante,* at 693–694. I hasten to observe, however, that this result turns on a determination of Congress' intent. The Court's holding today surely does not require that the same result automatically be reached in a State where the legislature enacts criminal sanctions clearly authorizing cumulative sentences for a defendant convicted on charges of felony murder and the underlying predicate felony. Nor does this Court's *per curiam* opinion in *Harris* v. *Oklahoma,* 433 U. S. 682 (1977),

---

[2] See *People* v. *Hughes,* 85 Mich. App. 674, 272 N. W. 2d 567 (1978); *id.,* at 683–687, 272 N. W. 2d, at 569–571 (Bronson, J., concurring); *id.,* at 687–696, 272 N. W. 2d, at 571–575 (Walsh, J., dissenting); *Ennis* v. *State,* 364 So. 2d 497 (Fla. App. 1978); *id.,* at 500 (Grimes, C. J., concurring); and *State* v. *Frye,* 283 Md. 709, 393 A. 2d 1372 (1978); *id.,* at 725–726, 393 A. 2d, at 1380–1381 (Murphy, C. J., concurring). In each of these state cases, the panels divided on the meaning of this Court's pronouncements respecting the Double Jeopardy Clause's prohibition against multiple punishments. See also cases cited in n. 3, *infra.*

holding that *successive prosecutions* for felony murder and the underlying predicate felony are constitutionally impermissible, require the States to reach an analogous result in a multiple punishments case. Unfortunately, the rather obvious holding in *Harris* and the dictum in *Simpson* have combined to spawn disorder among state appellate courts reviewing challenges similar to the one presented here.[3] I would hope that today's holding will remedy, rather than exacerbate, the existing confusion.

MR. JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE joins, dissenting.

Historians have traced the origins of our constitutional guarantee against double jeopardy back to the days of Demosthenes, who stated that "the laws forbid the same man to be tried twice on the same issue. ; . ." 1 Demosthenes 589 (J. Vince trans., 4th ed. 1970). Despite its roots in antiquity, however, this guarantee seems both one of the least understood and, in recent years, one of the most frequently litigated provisions of the Bill of Rights. This Court has done little to alleviate the confusion, and our opinions, including ones authored by me, are replete with *mea culpa's* occasioned by shifts in assumptions and emphasis. Compare, *e. g.*, *United States* v. *Jenkins*, 420 U. S. 358 (1975), with *United States* v. *Scott*, 437 U. S. 82 (1978) (overruling *Jenkins*). See also *Burks* v. *United States*, 437 U. S. 1, 9 (1978) (Our

---

[3] Compare *People* v. *Anderson*, 62 Mich. App. 475, 233 N. W. 2d 620 (1975) (a case in which a state court concluded, based on relevant indicia of legislative intent, that cumulative punishments for armed robbery and a felony murder based upon that robbery were not intended), with *State* v. *Pinder*, 375 So. 2d 836 (Fla. 1979); *State* v. *Frye*, 283 Md. 709, 393 A. 2d 1372 (1978); *State* v. *Innis*, —— R. I. ——, 391 A. 2d 1158 (1978), cert. granted, 440 U. S. 934 (1979); *Mitchell* v. *State*, 270 Ind. ——, 382 N. E. 2d 932 (1978); *Briggs* v. *State*, 573 S. W. 2d 157 (Tenn. 1978) (the latter decisions, erroneously I believe, gave controlling effect to *Harris* in challenges to cumulative punishments for felony murder and the underlying felony).

holdings on this subject "can hardly be characterized as models of consistency and clarity"). Although today's decision takes a tentative step toward recognizing what I believe to be the proper role for this Court in determining the permissibility of multiple punishments, it ultimately compounds the confusion that has plagued us in the double jeopardy area.

## I

In recent years we have stated in the manner of "black letter law" that the Double Jeopardy Clause serves three primary purposes. First, it protects against a second prosecution for the same offense after an acquittal. Second, it protects against a second prosecution for the same offense after a conviction. Third, it protects against multiple punishments for the same offense. See *North Carolina* v. *Pearce,* 395 U. S. 711, 717 (1969); *Brown* v. *Ohio,* 432 U. S. 161, 165 (1977). See also *ante,* at 688 (opinion of the Court). Obviously, the scope of each of these three protections turns upon the meaning of the words "same offense," a phrase deceptively simple in appearance but virtually kaleidoscopic in application. Indeed, we have indicated on at least one prior occasion that the meaning of this phrase may vary from context to context, so that two charges considered the same offense so as to preclude prosecution on one charge after an acquittal or conviction on the other need not be considered the same offense so as to bar separate punishments for each charge at a single proceeding. See *Brown* v. *Ohio, supra,* at 166–167, n. 6.

In the present case we are asked to decide whether the Double Jeopardy Clause bars the imposition of separate punishments for the crimes of rape and felony murder based on rape. Because the sentences challenged by petitioner were imposed at a single criminal proceeding, this case obviously is not controlled by precedents developed in the context of successive prosecutions. Thus, the Court rightly

eschews reliance upon *Harris* v. *Oklahoma,* 433 U. S. 682 (1977), where we concluded that the crimes of robbery and felony murder predicated on that robbery were similar enough to prevent the State of Oklahoma from prosecuting a person for the former offense after convicting him of the latter offense. See *ante,* at 694 (opinion of the Court). See also *ante,* at 698–699 (BLACKMUN, J., concurring in judgment).

Having determined that this case turns on the permissibility of "multiple punishments" imposed at a single criminal proceeding, the Court takes a tentative step in what I believe to be the right direction by indicating that the "dispositive question" here is whether Congress intended to authorize separate punishments for the two crimes. *Ante,* at 689 (opinion of the Court). As MR. JUSTICE BLACKMUN notes in his concurrence, this Court has not always been so forthright in recognizing that Congress could, if it so desired, authorize cumulative punishments for violation of two separate statutes, whether or not those statutes defined "separate offenses" in some abstract sense. See *ante,* at 698. While we have hinted at this proposition in prior opinions, see, *e. g., Brown* v. *Ohio, supra,* at 165; *Gore* v. *United States,* 357 U. S. 386, 394 (1958) (Warren, C. J., dissenting), we have just as often hedged our bets with veiled hints that a legislature might offend the Double Jeopardy Clause by authorizing too many separate punishments for any single "act." See, *e. g., Simpson* v. *United States,* 435 U. S. 6, 11–12 (1978); *Sanabria* v. *United States,* 437 U. S. 54, 69 (1978); *Jeffers* v. *United States,* 432 U. S. 137, 155 (1977) (plurality opinion). To the extent that this latter thesis assumes that any particular criminal transaction is made up of a determinable number of constitutional atoms that the legislature cannot further subdivide into separate offenses, "it demands more of the Double Jeopardy Clause than it is capable of supplying." Westen & Drubel, Toward a General Theory of Double Jeopardy, 1978 S. Ct. Rev. 81, 113. See also Note, Twice in Jeopardy, 75 Yale L. J. 262, 311–313 (1965).

Having come thus far with the Court and the concurrence, I here part company, for it seems clear to me that, if the only question confronting this Court is whether Congress intended to authorize cumulative punishments for rape and for felony murder based upon rape, this Court need decide no constitutional question whatsoever. Axiomatically, we are obligated to avoid constitutional rulings where a statutory ruling would suffice. See *Hagans* v. *Lavine,* 415 U. S. 528, 549 (1974); *Ashwander* v. *TVA,* 297 U. S. 288, 347 (1936) (Brandeis, J., concurring). Thus, to the extent that the trial court exceeded its legislative authorization in sentencing petitioner to consecutive sentences for rape and felony murder where Congress intended the offenses to merge, our holding should rest solely on our interpretation of the relevant statutes rather than on vague references to "the principle of the separation of governmental powers embodied in the Double Jeopardy Clause of the Fifth Amendment. . . ." *Ante,* at 695 (opinion of the Court).

Like many of the false trails we have followed in this area, the Court's confusion of statutory and constitutional inquiries is not without precedent. *Brown* v. *Ohio* contains dictum to the effect that, "[w]here consecutive sentences are imposed at a single criminal trial," the Double Jeopardy Clause prevents the sentencing court from "exceed[ing] its legislative authorization by imposing multiple punishments for the same offense." 432 U. S., at 165. In support of this dictum, which I believe ill-considered, *Brown* cited three cases: *Ex parte Lange,* 18 Wall. 163 (1874); *Bell* v. *United States,* 349 U. S. 81 (1955); and *Gore* v. *United States, supra.* In doing so, it tied together three separate strands of cases in what may prove to be a true Gordian knot.

In *Ex parte Lange* petitioner had been convicted under a statute authorizing a punishment of either fine or imprisonment. The District Court nevertheless sentenced him to a fine *and* imprisonment. Petitioner had paid his fine and had begun to serve his sentence when the District Court, appar-

ently recognizing its mistake, held a new sentencing proceeding and resentenced him to imprisonment only. Noting that petitioner had fully satisfied the relevant statute by paying the fine, this Court held that he was entitled to protection from a second punishment "in the same court, on the same facts, for the same statutory offence." 18 Wall., at 168. As is borne out by subsequent cases, the Double Jeopardy Clause as interpreted in *Ex parte Lange* prevents a sentencing court from increasing a defendant's sentence for any particular statutory offense, even though the second sentence is within the limits set by the legislature. See *North Carolina* v. *Pearce,* 395 U. S. 711 (1969); *United States* v. *Benz,* 282 U. S. 304, 307 (1931). See also *United States* v. *Sacco,* 367 F. 2d 368 (CA2 1966); *United States* v. *Adams,* 362 F. 2d 210 (CA6 1966); *Kennedy* v. *United States,* 330 F. 2d 26 (CA9 1964).

In *Bell* v. *United States, supra,* this Court considered a question wholly different from that considered in *Ex parte Lange* and its progeny: the proper units into which a statutory offense was to be divided. The petitioner in *Bell* had been convicted of two counts of violating the Mann Act, 18 U. S. C. § 2421 *et seq.,* for carrying two women across state lines for an immoral purpose. Both counts dealt with the same trip in the same car. The question presented to the Court was whether simultaneous transportation of more than one woman in violation of the Mann Act constituted multiple violations of that Act subjecting the offender to multiple punishments. The Court noted that Congress could, if it so desired, hinge the severity of the punishment on the number of women involved. Finding no evidence of such an intent, the Court applied the traditional "rule of lenity" and held that petitioner could only be punished for a single count.

Most significantly for our purposes, *Bell* was based entirely upon this Court's interpretation of the statute and the relevant legislative intent; it did not mention the Double Jeopardy Clause at all. In finding congressional intent on the

appropriate unit of prosecution dispositive, the Court acted consistently with a long line of cases based in English common law. In *Crepps* v. *Durden,* 2 Cowp. 640, 98 Eng. Rep. 1283 (K. B. 1777), Lord Mansfield, writing for a unanimous court, held that the sale of four loaves of bread on Sunday in violation of a statute forbidding such sale constituted one offense, not four. According to Lord Mansfield: "If the Act of Parliament gives authority to levy but one penalty, there is an end of the question. . . ." *Id.,* at 646, 98 Eng. Rep., at 1287. One hundred years later, this Court expressly adopted the reasoning of *Crepps* that the proper unit of prosecution was completely dependent upon the legislature's intent. See *In re Snow,* 120 U. S. 274, 283–286 (1887). We have consistently abided by this rule since that time, noting on at least one occasion that "[t]here is no constitutional issue presented" in such cases. See *Ladner* v. *United States,* 358 U. S. 169, 173 (1958). See also *United States* v. *Universal C. I. T. Credit Corp.,* 344 U. S. 218 (1952); *Ebeling* v. *Morgan,* 237 U. S. 625 (1915). Cf. *Sanabria* v. *United States,* 437 U. S., at 69–70 (successive prosecutions).

*Gore* v. *United States,* the third case cited in *Brown,* presented an issue analogous to, but slightly different from, that presented in *Bell* and the other unit-of-prosecution cases, namely, the permissibility of consecutive sentences when a defendant committed a single act that violated two or more criminal provisions. This issue, the precise one confronting us today, has been litigated in an astonishing number of statutory contexts with little apparent analytical consistency. See, *e. g., Simpson* v. *United States,* 435 U. S. 6 (1978); *Harris* v. *United States,* 359 U. S. 19 (1959); *Heflin* v. *United States,* 358 U. S. 415 (1959); *Prince* v. *United States,* 352 U. S. 322 (1957); *Pereira* v. *United States,* 347 U. S. 1 (1954); *American Tobacco Co.* v. *United States,* 328 U. S. 781 (1946); *Holiday* v. *Johnston,* 313 U. S. 342 (1941); *Blockburger* v. *United States,* 284 U. S. 299 (1932); *Morgan* v. *Devine,* 237 U. S. 632 (1915); *Burton* v. *United States,* 202 U. S. 344

(1906); *Carter* v. *McClaughry,* 183 U. S. 365 (1902). In some of these cases the Court seems to have recognized that it was attempting to divine legislative intent. See, *e. g., Prince* v. *United States, supra,* at 328; *Morgan* v. *Devine, supra,* at 638–639; *Burton* v. *United States, supra,* at 377. In other cases, the Court seemed to apply a "same evidence" test borrowed from cases involving successive prosecutions.[1] See, *e. g., Pereira* v. *United States, supra,* at 9; *Carter* v. *McClaughry, supra,* at 394–395. In still others it is difficult to determine the precise basis for the Court's decision. See, *e. g., Harris* v. *United States, supra.* As in the unit-of-prosecution cases, this Court has specified on at least one occasion that the erroneous imposition of cumulative sentences in a single case raises no constitutional issue at all. See *Holiday* v. *Johnston, supra,* at 349.

Unlike the Court, I believe that the Double Jeopardy Clause should play no role whatsoever in deciding whether cumulative punishments may be imposed under different statutes at a single criminal proceeding. I would analogize the

---

[1] The "same evidence" test was first formulated in *Morey* v. *Commonwealth,* 108 Mass. 433, 434 (1871), where the Supreme Judicial Court of Massachusetts held:

"A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other. The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offence. A single act may be an offence against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

This Court has placed varying degrees of reliance upon this test both in the context of successive prosecutions, see, *e. g., Brown* v. *Ohio,* 432 U. S. 161 (1977); *Gavieres* v. *United States,* 220 U. S. 338, 342 (1911), and in the context of multiple punishments imposed at a single criminal proceeding. See, *e. g., Blockburger* v. *United States,* 284 U. S. 299 (1932); *Carter* v. *McClaughry,* 183 U. S. 365 (1902). See also *infra,* at 707–714.

present case to our unit-of-prosecution decisions and ask only whether Congress intended to allow a court to impose consecutive sentences on a person in petitioner's position. To paraphrase Lord Mansfield's statement in *Crepps* v. *Durden, supra,* that should be the end of the question. As even the Court's analysis of the merits here makes clear, see *ante,* at 690–694, traditional statutory interpretation as informed by the rule of lenity completely supplants any possible additional protection afforded petitioner by the Double Jeopardy Clause.

The difference in this context between a constitutional decision and a statutory decision is not merely one of judicial semantics. Both the Court and the concurrence appear to invoke the Double Jeopardy Clause to justify their refusal to defer to the District of Columbia Court of Appeals' interpretation of these locally applicable statutes. See *ante,* at 688 (opinion of the Court); *ante,* at 696 (BLACKMUN, J., concurring in judgment). The mischief in this approach, I believe, is well illustrated in a footnote—fairly described as either cryptic or tautological—stating that "[t]he Due Process Clause of the Fourteenth Amendment . . . would presumably prohibit state courts from depriving persons of liberty or property as punishment for criminal conduct except to the extent authorized by state law." *Ante,* at 690, n. 4 (opinion of the Court). The effect of this and similar statements in the opinion of the Court, I fear, will be to raise doubts about questions of state law that heretofore had been thought to be exclusively the province of the highest courts of the individual States. To the extent that the Court implies that a state court can ever err in the interpretation of its own law and that such an error would create a federal question reviewable by this Court, I believe it clearly wrong.[2] For the question in

---

[2] We are not dealing here, of course, with a case where a state court has engaged in "retroactive lawmaking" by interpreting a local statute in an unforeseeable manner. Compare *Bouie* v. *City of Columbia,* 378 U. S. 347 (1964), with *Rose* v. *Locke,* 423 U. S. 48 (1975).

such cases is not whether the lower court "misread" the relevant statutes or its own common law, but rather who does the reading in the first place.

## II

Because the question before us is purely one of statutory interpretation, I believe that we should adhere to our "long-standing practice of not overruling the courts of the District on local law matters 'save in exceptional situations where egregious error has been committed.'" *Pernell* v. *Southall Realty,* 416 U. S. 363, 369 (1974), quoting from *Griffin* v. *United States,* 336 U. S. 704, 718 (1949). In the present case I would suggest that the lower court, far from committing "egregious error," engaged in analysis much more sophisticated than that employed by the Court herein and reached a conclusion that is not only defensible, but quite probably correct.

The Court's attempt to determine whether Congress intended multiple punishment in a case like petitioner's is really quite cramped. It looks first to the legislative history surrounding the adoption of the relevant provisions and finds that history inconclusive. See *ante,* at 690, and n. 5. It then attempts to mechanistically apply the rule of statutory construction employed by this Court in *Blockburger* v. *United States,* 284 U. S. 299 (1932). See *ante,* at 691–694. Under that test, two statutory provisions are deemed to constitute the "same offense" so as to preclude imposition of multiple punishments unless "each provision requires proof of a fact which the other does not." 284 U. S., at 304. In *Blockburger,* for example, this Court determined that a provision forbidding the sale of certain drugs except in or from the original stamped package and a provision forbidding the selling of the same drugs "not in pursuance of a written order of the" purchaser defined separate offenses because "each of the offenses created requires proof of a different element." *Ibid.* Thus, separate penalties could be imposed under each statute, even though both offenses were based on the same sale.

Two observations about the *Blockburger* test are especially relevant in this case. First, the test is a rule of statutory construction, not a constitutional talisman.[3] See *Iannelli* v. *United States,* 420 U. S. 770, 785, n. 17 (1975). Having already posited that the Double Jeopardy Clause imposes no restraint upon a legislature's ability to provide for multiple punishments, I believe it clear that a legislature could, if it so desired, provide for separate punishments under two statutory provisions, even though those provisions define the "same offense" within the meaning of *Blockburger.* To take a simple example, a legislature might set the penalty for assault at two years' imprisonment while setting the penalty for assault with a deadly weapon as "two years for assault and an additional two years for assault with a deadly weapon." Even though the former crime is obviously a lesser included offense of the latter crime—or, in the rubric of *Blockburger,* the first offense does not require proof of any fact that the second does not—neither *Blockburger* nor the Double Jeopardy Clause would preclude the imposition of the "cumulative" sentence of two years.[4]

Second, the *Blockburger* test, although useful in identifying statutes that define greater and lesser included offenses in the traditional sense, is less satisfactory, and perhaps even misdirected, when applied to statutes defining "compound" and "predicate" offenses. Strictly speaking, two crimes do not stand in the relationship of greater and lesser included offenses unless proof of the greater necessarily entails proof of the

---

[3] It should not matter whether the *Blockburger* test enters this case as a common canon of statutory construction, see *Iannelli* v. *United States,* 420 U. S. 770, 785, n. 17 (1975), or through the "less than felicitous" phrasing of D. C. Code § 23–112. See *ante,* at 691 (opinion of the Court). In either case, the dispositive question is whether the legislature intended to allow multiple punishments, and the *Blockburger* test should be employed only to the extent that it advances that inquiry.

[4] In this regard, see also the discussion of the sentencing scheme under 18 U. S. C. § 924 (c) (1), *infra,* at 709.

lesser. See *Brown* v. *Ohio,* 432 U. S., at 167–168. See also Black's Law Dictionary 1048 (rev. 4th ed. 1968). In the case of assault and assault with a deadly weapon, proof of the latter offense will always entail proof of the former offense, and this relationship holds true regardless whether one examines the offenses in the abstract or in the context of a particular criminal transaction.

On the other hand, two statutes stand in the relationship of compound and predicate offenses when one statute incorporates several other offenses by reference and compounds those offenses if a certain additional element is present. To cite one example, 18 U. S. C. § 924 (c)(1) states that "[w]hoever . . . uses a firearm to commit any felony for which he may be prosecuted in a court of the United States . . . shall . . . be sentenced to a term of imprisonment for not less than one year nor more than ten years." Clearly, any one of a plethora of felonies could serve as the predicate for a violation of § 924 (c)(1).

This multiplicity of predicates creates problems when one attempts to apply *Blockburger.* If one applies the test in the abstract by looking solely to the wording of § 924 (c)(1) and the *statutes defining* the various predicate felonies, *Blockburger* would always permit imposition of cumulative sentences, since no particular felony is ever "necessarily included" within a violation of § 924 (c)(1). If, on the other hand, one looks to the *facts alleged in a particular indictment* brought under § 924 (c)(1), then *Blockburger* would bar cumulative punishments for violating § 924 (c)(1) and the particular predicate offense charged in the indictment, since proof of the former would necessarily entail proof of the latter.

Fortunately, in the case of § 924 (c)(1) Congress made its intention explicit, stating unequivocally that the punishment for violation of that statute should be imposed "in addition to the punishment provided for the commission of [the predicate] felony. . . ." 18 U. S. C. § 924 (c). But in the present

case, where the statutes at issue also stand in the relationship of compound and predicate offenses, Congress has not stated its intentions so explicitly. The felony-murder statute under consideration here provides:

> "Whoever, being of sound memory and discretion, kills another purposely, either of deliberate and premeditated malice or by means of poison, or in perpetrating or attempting to perpetrate any offense punishable by imprisonment in the penitentiary, or without purpose so to do kills another in perpetrating or in attempting to perpetrate any arson, . . . rape, mayhem, robbery, or kidnapping, or in perpetrating or attempting to perpetrate any housebreaking while armed with or using a dangerous weapon, is guilty of murder in the first degree." D. C. Code § 22–2401 (1973).

The rape statute under consideration reads, in relevant part:

> "Whoever has carnal knowledge of a female forcibly and against her will . . . shall be imprisoned for any term of years or for life." D. C. Code § 22–2801 (1973).

If one tests the above-quoted statutes in the abstract, one can see that rape is not a lesser included offense of felony murder, because proof of the latter will not necessarily require proof of the former. One can commit felony murder without rape and one can rape without committing felony murder. If one chooses to apply *Blockburger* to the *indictment* in the present case, however, rape is a "lesser included offense" of felony murder because, *in this particular case,* the prosecution could not prove felony murder without proving the predicate rape.

Because this Court has never been forced to apply *Blockburger* in the context of compound and predicate offenses,[5]

---

[5] But see *Simpson* v. *United States,* 435 U. S. 6, 11–12, and n. 6 (1978) (reserving application of *Blockburger* in context of 18 U. S. C. § 924 (c)); *Jeffers* v. *United States,* 432 U. S. 137, 149–150 (1977) BLACKMUN, J.) (assuming, *arguendo,* that 21 U. S. C. § 846 is a lesser

we have not had to decide whether *Blockburger* should be applied abstractly to the statutes in question or specifically to the indictment as framed in a particular case. Our past decisions seem to have assumed, however, that *Blockburger's* analysis stands or falls on the wording of the statutes alone. Thus, in *Blockburger* itself the Court stated that "the applicable rule is that where the same act or transaction constitutes a violation of two distinct *statutory provisions*, the test to be applied to determine whether there are two offenses or only one, is whether each *provision* requires proof of a fact which the other does not." 284 U. S., at 304 (emphasis added). More recently, we framed the test as whether " 'each *statute* requires proof of an additional fact which the other does not. . . .' " *Brown* v. *Ohio, supra,* at 166, quoting *Morey* v. *Commonwealth,* 108 Mass. 433, 434 (1871) (emphasis added). See also *Iannelli* v. *United States,* 420 U. S., at 785, n. 17 ("[T]he Court's application of the [*Blockburger*] test focuses on the statutory elements of the offense"); M. Friedland, Double Jeopardy 212–213 (1969) (noting the two possible interpretations and pointing out that "the word 'provision' is specifically used in the test" as stated in *Blockburger*). Moreover, because the *Blockburger* test is simply an attempt to determine legislative intent, it seems more natural to apply it to the language as drafted by the legislature than to the wording of a particular indictment.

The Court notes this ambiguity but chooses instead to apply the test to the indictment in the present case.[6] See

included offense of 21 U. S. C. § 848). But see also *American Tobacco Co.* v. *United States,* 328 U. S. 781, 788 (1946) (finding, under *Block-burger,* that conspiracies to violate §§ 1 and 2 of the Sherman Act could be punished separately).

[6] The Court denies that it applies the *Blockburger* test to the indictment in this case, asserting instead that it merely concludes that "rape [is] to be considered a lesser offense included within the offense of a killing in the course of rape." *Ante,* at 694, n. 8. Our disagreement on this matter turns on the elusive meaning of the word "offense." Technically,

*ante,* at 693–694. In doing so, it offers only two reasons for rejecting what would seem to be the more plausible interpretation of *Blockburger.* First, the Court notes that Congress *could* have broken felony murder down in six separate statutory provisions, one for each of the predicate offenses specified in § 22–2401, thereby insuring that, under *Blockburger,* rape would be a lesser included offense of murder in the course of rape. According to the Court, "[i]t is doubtful that Congress could have imagined that so formal a difference in drafting had any practical significance, and we ascribe none to it." *Ante,* at 694. The short answer to this argument is that Congress did *not* break felony murder down into six separate statutory provisions. Thus, it hardly avails the Court to apply *Blockburger* to a statute that Congress did not enact. More significantly, however, I believe that the Court's example illustrates one of my central points: when applied to·compound and predicate offenses, the *Blockburger* test has nothing whatsoever to do with legislative intent, turning instead on arbitrary assumptions and syntactical subtleties. Cf. n. 6, *supra.* If the polestar in this case is to be legislative intent, I see no reason to apply *Blockburger* unless it advances that inquiry.

Second, the Court asserts that "to the extent that . . . the matter is not entirely free of doubt, the doubt must be re-

---

§ 22–2401 defines only one offense, murder in the first degree, which can be committed in any number of ways. Even if the inquiry is limited to the "sub-offense" of felony murder, § 22–2401 indicates that a person may be convicted if he kills purposely in the course of committing any felony or kills even accidentally in the course of committing one of six specified felonies. Only by limiting the inquiry to a killing committed in the course of a rape, a feat that cannot be accomplished .without reference to the facts alleged in .this particular case, can the Court conclude that the predicate offense is necessarily included in the compound offense under *Blockburger.* Because this Court has never before had to apply the *Blockburger* test to compound and predicate offenses, see n. 5, *supra,* and accompanying text, there is simply no precedent for parsing a single statutory provision in this fashion.

solved in favor of lenity." *Ante,* at 694. This assertion, I would suggest, forms the real foundation of the Court's decision. Finding no indication in the legislative history whether Congress intended cumulative punishment, and applying *Blockburger* with insolubly ambiguous results, the Court simply resolves its doubts in favor of petitioner and concludes that the rape committed by petitioner must merge into his conviction for felony murder. In doing so, the Court neglects the one source that should have been the starting point for its entire analysis: the lower court's construction of the relevant statutes.

Unlike this Court, the District of Columbia Court of Appeals looked beyond the ambiguous legislative history and the inconclusive *Blockburger* test to examine the common-law roots of the crime of felony murder and to consider the societal interests protected by the relevant statutes. As for the first source, the lower court concluded from the history of felony murder at common law that "while the underlying felony is an element of felony murder it serves a more important function as an intent-divining mechanism" and that merger of the two offenses was therefore "inappropriate." 379 A. 2d 1152, 1160 (1977). In so reasoning, the lower court acted in conformity with this Court's long tradition of reading criminal statutes enacted by Congress "in the light of the common law. . . ." *United States* v. *Carll,* 105 U. S. 611, 612 (1882). See also *Morissette* v. *United States,* 342 U. S. 246, 262–263 (1952).

In addition to looking to the common law for assistance in determining Congress' intent, the lower court examined "the societal interests protected by the statutes under consideration." 379 A. 2d, at 1158–1159. Because § 22–2801 was designed "to protect women from sexual assault" while § 22–2401 was intended "to protect human life," the court concluded that cumulative punishment was permissible. 379 A. 2d, at 1159. Indeed, the *Blockburger* test itself could be

viewed as nothing but a rough proxy for such analysis, since, by asking whether two separate statutes each include an element the other does not, a court is really asking whether the legislature manifested an intention to serve two different interests in enacting the two statutes.

## III

In sum, I find the lower court's reliance upon articulated considerations much more persuasive than this Court's capitulation to supposedly hopeless ambiguity. But even if the case were closer, I do not see how the lower court's conclusion could be classified as "egregious error" so as to justify our superimposing our own admittedly dubious construction of the statutes in question on the District of Columbia. Unless we are going to forgo deference to the interpretation of the highest court of the District of Columbia on matters of local applicability and are going to push several other well-recognized principles of statutory and constitutional construction out of shape, with consequences for the federal system for the 50 States, I would hope that the Court's decision would be one ultimately based on the "rule of lenity." Because I believe that the question confronting us is purely one of statutory construction and because I believe the analysis indulged in by the Court of Appeals for the District of Columbia comes far closer to the proper ascertainment of congressional intent than does this Court's opinion, I would affirm the judgment of the District of Columbia Court of Appeals.