Deaeerick, J.,
delivered'the opinion of the Court.
The plaintiff in error was convicted of larceny at the October Term, 1870, of the Circuit Court of "White county, and a new trial having been refused, he appealed in error to this court.
The charge was, for stealing from Isaac Hudgins, the prosecutor, who is a colored man, one ten dollar, one five dollar, one two dollar, bank notes, commonly called green backs, two silver dimes, and one promissory note on Charles Lowrey for forty-four dollars, alleging their value.
Upon the trial Sally Matlock, a colored girl between 13 and 14 years of age, was introduced as a witness for the State, and upon preliminary examination by the court, stated, that no one ever told her what would be done with her, in this world or the next, if she swore falsely, and she did not know what would become of her. Upon being asked further what would become of her hereafter, if she swore a lie in this case; whether she would go to the good world or the bad world; she replied, if she swore to a lie, she would go to the bad world. She was then allowed to testify.
It is now insisted, that the answers of the witness, upon preliminary examination, did not disclose a consciousness of the obligation of an oath, nor of the eJon-sequences of swearing falsely, and that her testimony should have been rejected, upon the ground of her incapacity.
There is no precise age within which witnesses are absolutely excluded upon the presumption that they have not sufficient understanding to testify.
*122 At the age of fourteen years, a witness is presumed to have sufficient discretion and understanding to testify; under that age, such presumption does not arise; but the Judge usually examines him to ascertain the degree of his understanding; and if the witness manifests, in the opinion of the Judge, sufficient natural intelligence, and understands the nature and obligation of an oath, he may be examined, whatever may be his age: 1 Green-leaf’s Ev., 367. From the answers of the witness in the preliminary examination, we can not say that the Circuit Judge exercised the discretion committed to him unwisely. She seems not to have understood the signification of the word “falsely,” but when the question was asked her in more familiar language, responded promptly and intelligently.
But it is said, this witness is contradicted by the testimony of a negro woman, Margaret Officer. Sallie Matlock stated that she was at the "Ward House, and Isaac Hudgins came into Margaret Officer’s room and laid down and went to sleep; Margaret Officer and others were sitting outside of the house, and she, Sallie, was sitting near the window, where she could see Ike as he slept, and was within a few steps of him; that defendant, Vincent, came into the house, and went and felt Isaac Hudgins’ pockets first, and then took his money out of his sock leg; she was looking at him at the time, and told Margaret Officer that Vincent was stealing Isaac Hudgins’ money. There was no one in the house at the time.
Margaret Officer states that, on the day the money was said to have been stolen she was there; that Isaac *123 Hudgins came there and laid down to sleep, then John Vincent came in and went into the room. Sallie Matlock was sitting by the door, she was not at the window; that she (Margaret) was near a window that was nailed up so a person could not see in. That Henrietta was in the room at the time. Sallie told her that Vincent was taking Ike's money, and she (Margaret) told her to hush, that Vincent would kill her.
The alleged contradiction of Sallie’s statement is, that she was sitting by the door and not at the window, and could not have seen in the window, as it was nailed up. Sallie states she was sitting near the window, but she does not say that she saw through the window, and it is not shown how far apart the window and door were. She may have been near both. But it is not material that her statement should be strictly accurate as to where she sat, whether near the door or window. From the statement of Margaret, Sallie’s position near the door was more favorable for seeing what took place in the room than it would have been at the window; there is, therefore, no motive for a willful misstatement of the place she occupied at the time. Henrietta may have been in the room at the time, without Sallie’s knowledge. But both these facts are immaterial, and do not affect the credibility of either witness, unless shown to have been made with a knowledge of their falsity. Such immaterial discrepancies can not be held to be an impeachment of the credit of the witness. Both witnesses agree in the more important and material facts: that *124 Hudgins’ went into the room and laid down and slept; that Vincent afterwards went into the room where Hudgins was sleeping, and while he was in there, Margaret said Sallie told her he was taking Ike’s money, and Sallie swears she saw him take it.
That Vincent got the money there is no doubt. He admits it, but says he won it at cards. Pie says Ike had shown him and others his money that morning, and he knew that Ike had it in the leg of his sock.
Defendant introduced a witness, and proves by him that the defendant, at the blacksmith shop, proposed to Ike to play with him at cards for money, on the day the money was said to have been stolen, and witness inferred the proposition was accepted from what took place, but can’t say for • certain that Hudgins agreed to play. The witness left, and could not say whether they played or not.
He further states that French Crawford, Tom Stewart, and perhaps others, were at the shop. French Crawford states that, the day the money was said to have been stolen, Hudgins pulled his pocket-book out of his sock and showed his money, at the blacksmith shop; that he had a ten, a five and a two dollar bill, all greenback, and 20 cents in silver and some papers; one a note on Charles Lowrey.
Vincent (the defendant), James McGinnis and Tom Stewart, were present. Defendant had a pint of brandy and they all drank; that Vincent proposed to play cards; did not hear Ike agree to play; no cards were played.
*125 James McGinnis (colored) corroborates substantially the testimony of French Crawford, and states there was no card playing at the shop.
There is no testimony in the record to sustain the defense that the money was won at cards.
The pocket-book contained, beside the money, a note on Charles Lowrey for $44.10, and a tax receipt. The defendant admitted that he got the money and the note, but stated to Lowrey that he had never seen the pocket-book nor tax receipt. Afterwards, he told Lowrey that he won the' money and part of the note, and while playing a squabble got up and he snatched the note, got the pocket-book too, and the tax receipt was in it; and that he had spent the money. Ike Hudgins (the prosecutor) testified that he did not play cards with the defendant, and that his pocket-book, containing the money, note and tax receipt, were taken from him while he was asleep at Margaret Officer’s.
It is also insisted for defendant, that there being two indictments in the record, and it not appearing upon which the conviction was had, and one of them purporting to have been found at March Term, 1870, when no court was held, that this is an error for which the judgment should be reversed.
We are of opinion that it sufficiently appears that the conviction was had upon the indictment which purports to have been found at the May Term, 1870, and that the other indictment was re-committed to the Grand Jury upon the motion of the Attorney General, perhaps for the correction of the very error which is here complained of.
*126 It appears, also, that the indictment is signed by A. F. Capps, Attorney General, P. T., and it is objected that the record does not show any appointment of a pro temp. Attorney General. It is provided in Section 5242 of the Code, that where a person indicted for a criminal offense pleads not guilty, and is tried and convicted, he shall not be entitled to a new trial, or to an arrest, or reversal of the judgment, because the indictment was drawn by an Attorney General pro tem-pore, and the Clerk omitted to enter his appointment upon the minutes of the court.
It is also insisted for defendant, that there is no proof of the value of the greenbacks or the note on Lowrey, alleged to have been stolen, and that for this, a new trial must be granted. This objection is sufficiently answered by the proof by two witnesses, that defendant had admitted to them that he passed or spent the money he got of Hudgins. The fact that the bills passed currently is prima facie evidence of their genuineness, and that they were of the value imported on their face: 1 Sneed, 416; 8 Sneed, 86; 2 Wharton, § 1761, 6th edition, m.
Upon the motion for a new trial, the defendant read his own affidavit and those of several other persons.
None of these affidavits, except that of defendant, states any fact that contradicts the material facts established on the trial. The defendant shows that he was aware of what he could prove by these several affiants before the trial. He made no effort to procure their testimony, nor did he offer to continue the cause to procure their testimony, and we can not see any sufficient *127 grounds disclosed in tbe affidavits for granting a new trial.
Upon a careful examination of tbe whole testimony, we are of opinion that tbe verdict of the jury is well sustained by the proofs; that the charge of the Court was correct, and we affirm the judgment.