**STATE of Tennessee, Appellee,**

v.

**James Edward DELBRIDGE, Appellant.**

Court of Criminal Appeals of Tennessee, Jackson.

Oct. 1, 1981.

Permission to Appeal Denied by Supreme Court Dec. 28, 1981.

William M. Leech, Jr., Atty. Gen., Jerry L. Smith, Asst. Atty. Gen., Nashville, James J. Challen, Asst. Dist. Atty. Gen., Memphis, for appellee.

Robert M. Friedman, Memphis, for appellant.

## OPINION

O'BRIEN, Judge.

Defendant was convicted on two indictments in the Shelby County Criminal Court. The first charged him with second degree murder committed by the use of a pistol for which he was sentenced to serve forty-five (45) years in the penitentiary. On the second conviction, for carrying a pistol with intent to go armed, he received a Fifty Dollar ($50) fine.

Several issues are raised. We consider first the insistence that the verdict of the jury was contrary to the weight of the evidence. Defendant asserts the proof preponderates in favor of his theory that the victim's death was brought about by collateral reasons and not as the direct result of any actions on his part. He also says the evidence adduced at trial supports his theory of self-defense. A summary of the trial evidence is essential to a solution of these issues.

Defendant and the homicide victim, Norvin Brown, apparently both lived on Holman Street in the City of Memphis. Late in the evening of July 28, 1979 the two men became involved in an altercation over blocking the passage of their respective automobiles on the street. The argument progressed to the point which culminated in the shooting as Mr. Brown was making a left turn into his driveway at 1737 Holman.

The State's version was that Brown was having difficulty manipulating the turn into the driveway, finding it necessary to make at least two attempts by backing into the street and aligning the automobile with the driveway. State's witnesses testified that Delbridge fired a gun at Brown apparently without any physical provocation. Brown commented, "what you tryin' to do, scare somebody?" Defendant took a couple more steps and fired again. Apparently the first shot passed through Brown's right arm

just above the right wrist. The second round entered the right side of his body and lodged in the back of his chest. Medical evidence indicated he bled to death as a result of the gunshot would to the chest.

According to defendant's testimony he was following the victim's vehicle down Holman Street. Brown turned partially into the driveway, let some children out of the car, and stood by the side of his vehicle which was blocking the street. Words passed between them and finally Brown moved his car forward in the driveway sufficiently to allow him to pass. As he was driving by Brown put his car into reverse as if he were attempting to ram into him. Defendant parked on the opposite side of the street and was walking across when Brown came around from the driver's side of the car toward the rear end of his own vehicle in a rapid manner, sticking his hand into his pocket. Defendant removed a .25 caliber automatic from his own pocket and fired. He says he fired the first time to let Brown know he was armed because he was of the opinion Brown was going for a gun and he wanted to, "keep him off of me." He had no intention of killing Brown. When Brown started toward him again he shot the second time because he believed Brown intended to harm him. Other defense witnesses testified they saw the victim lying on the ground and saw a woman wearing a housecoat who appeared to take a gun from his body and run to the house with it hidden in her clothing. This was refuted by State witnesses who denied any such occurrence took place.

■ The discrepancies in the evidence and conflicts in the testimony have been resolved by the verdict of the jury whose function it is to resolve the conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the evidence in reaching their verdict. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Tennessee Appellate Procedure Rule 13(e) requires that findings of guilt in criminal actions shall be set aside if the evidence is insufficient to support the findings of guilt by the trier of fact beyond a reasonable doubt. Once a defendant has been found guilty of the crime charged, upon judicial review, all of the evidence is to be considered in the light most favorable to the prosecution. The inquiry by the reviewing court is not to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt but whether, after reviewing the evidence on that basis, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, supra. The jury rejected defendant's theory of self-defense and the evidence sustained this conclusion on their part. The same is true regarding the cause of death of Mr. Brown. Defendant, in his brief, correctly states that there was no evidence before the jury relative to what ensued at the hands of the doctors and medical attendants after his injury inflicted by the shooting. The law on this subject is that one who unlawfully inflicts a dangerous wound upon another is held for the consequences flowing from such injury, whether the sequence be direct or through the operation of intermediate agencies dependent upon and arising out of the original cause. *Evans v. State*, 557 S.W.2d 927, (Tenn.Cr.App.1977).

■ Defendant's complaint that the trial judge commented on the evidence during the trial is without merit. Defense counsel, in the process of direct examination of defendant, was endeavoring to show why he was carrying a pistol at the time the altercation with Mr. Brown occurred. In sustaining the objection to this line of questioning the trial judge stated the law relative to the offense of carrying a pistol. This statement of the law should have been, and was, included in the instructions to the jury. Although perhaps redundant at the time it was made, it certainly was not prejudicial.

■ An issue, blown out of all reasonable proportions, is defendant's claim that the trial judge erred in allowing State's counsel to retrieve a statement provided, during the trial, to defense counsel pursuant to Criminal Procedure Rule 16(a)(1)(E).

After the direct testimony of a State's witness defense counsel requested and received a written pretrial statement of the witness. At the conclusion of cross-examination the Assistant District Attorney General representing the State picked up the statement from the counsel table. Defense counsel insisted on having it returned to him. State's counsel offered to return it. The trial judge declined to rule on whether or not defense counsel was entitled to have the document returned to him. He suggested that counsel was only entitled to the statement during cross-examination of the witness and it was his inclination to make a test case of the issue. Defense counsel claimed to have made some trial notes on the document during his cross-examination. The trial judge refused to direct the return of the instrument to him and in so doing offered what can only be categorized as facetious advice to sue for its return.

In the first instance the original document was not submitted to defense counsel. He received a copy as is usually the custom and there was no reason for the Assistant District Attorney to take it back. Secondly, the Assistant District Attorney General stated he had no objections to returning the instrument to defense counsel. Third, the record does not sustain counsel's claim that he made trial notes on the statement. It would have been most improvident for him to do so had it been an original trial document. Fourth, the administration of the rule is entrusted to the good sense and experience of trial judges subject to appropriately limited review of appellate courts. See *United States v. Augenblick*, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969). The trial judge was abdicating his duty in declining to rule on the question. Defense counsel was entitled to production of the statement for impeachment purposes only. See *Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). Our examination of the instrument in question, production of which was ordered by this Court, makes plain there was no prejudice to defendant.

Defendant makes a multi-pronged attack on T.C.A. § 39–4914, the Code Section providing penalties for the use of firearms or explosives in committing or escaping from a felony.

■ It is insisted that T.C.A. § 39–4914 was repealed by Chapter 793 of the Public Acts of 1976. This is a misconception on the part of defendant. Although the caption of the original bill (House Bill No. 1990) stated that the act was intended to repeal Section 39–4914 of the Code, in its final enactment into Chapter 793 of the Public Acts, incorporated in T.C.A. § 39–4921–4923, the sections of the Bill repealing T.C.A. § 39–4914 were deleted, and not enacted into law. The notes to decisions following Article II, Section 17 of the Constitution of Tennessee, contained in Volume 1, Tennessee Code Annotated, are replete with cases dealing with the requirement that repealing, reviving or amendatory laws recite the title or substance of the former law subject to change. The purpose of the requirement is to give members of the legislature, and the public, notice of the substance of the statute subject to repeal, revision, or amendment, so as to avoid the likelihood of the enactment of statutes the effect of which is unknown, and to prevent surprise and fraud in the enactment of laws. No better example can be given than the case sub judice, where, in the final passage of House Bill 1990 the House of Representatives adopted Senate amendments deleting that portion of the Bill intended to repeal T.C.A. § 39–4914 of the Code as stated in the caption. While this Court is aware of the Supreme Court opinion in *Walker v. State*, 606 S.W.2d 531, (Tenn.1980), that opinion did not consider the enactment of Chapter 793. As stated in *Walker*, supra, statutory provisions are to be given a reasonable rather than a strained construction in order to implement the evident legislative purpose. By its Act in deleting the repeal of T.C.A. § 39–4914 from the provisions of Chapter 793 of the Public Acts of 1976, and the incorporation of Chapter 793 into a separate Code Section, (T.C.A. § 39–4923), particularly proscribing the *possession* of a firearm ... while committing ... a felony, we are satisfied that the

legislature intended a specific penalty of greater severity for the employment of a firearm while committing a felony than simply for its possession while engaged in that activity. This point was made quite clear in our case of *Nease v. State*, 592 S.W.2d 327, (Tenn.Cr.App.1979), permission to appeal denied 10/22/79. In light of what we have said we think the trial judge properly instructed the jury they could return a verdict against the defendant under the appropriate charge in the indictment, and that the verdict of the jury was proper in assessing punishment under that count in the indictment. Moreover, the Act of the Legislature in codifying T.C.A. § 39–4921–4923 validated Chapter 793 of the 1976 Acts as it appears in the Code. See *Farris v. State*, 579 S.W.2d 899, (Tenn.Cr.App.1978).

Defendant also takes the position that it was error to allow the testimony of a ten-year-old minor witness on the theory that she was never properly qualified, did not understand the purpose of an oath, nor the difference between telling the truth and swearing to a falsehood.

The witness was called for the State. Upon objection made as to her competency to testify a hearing was held out of the presence of the jury. The witness was examined by counsel for the State, the defendant, and the trial judge.

■ The rule in Tennessee, as stated in *Ball v. State*, 188 Tenn. 255, 219 S.W.2d 166 (1948), is that a child under the age of fourteen (14) is not presumed competent, although a child of any age may be competent if possessed with the mental capacity and memory sufficient to be able to give a reasonable and intelligible account of the subject matter of their testimony. Also, they must have a reasonable appreciation of the difference between right and wrong, and comprehend the character, meaning and obligations of an oath. While a great deal of the controversy and argument on this issue might have been avoided if the trial judge had proceeded with the examination of the witness before allowing her testimony this procedure is not mandatory to establish the competence of a witness.

In *Vincent v. State*, 50 Tenn. 120, (1871), cited by the *Ball* court, it was said that at the age of fourteen (14) years, a witness is presumed to have sufficient discretion and understanding to testify; under that age, such presumption does not arise; but the judge *usually* examines him to ascertain the degree of his understanding; and if the witness manifests, in the opinion of the judge, sufficient natural intelligence, and understands the nature and obligation of an oath, he may be examined, whatever may be his age. (Citations omitted). In *Franks v. State*, 213 S.W.2d 105, 187 Tenn. 174 (1948), our Supreme Court had this to say on the issue of the competence of a seven-year-old child:

"It is next insisted that the trial judge was in error in permitting the seven-year-old daughter of deceased to testify. This little child was examined by counsel and upon her examination, in answer to a question as to what becomes of children who do not tell the truth, made the statement that they did not go to Jesus. We think this evidence shows a recognition of a state of future punishments and rewards. We have no case in this State directly in point, but we quote from the case of *Wheeler v. United States*, 159 U.S. 523, 525, 16 S.Ct. 93, 40 L.Ed. 244, 247, as follows: 'The decision of this question rests primarily with the trial judge, who sees the proposed witness, notices his manner, his apparent possession or lack of intelligence, and may resort to any examination which will tend to disclose his capacity and intelligence, as well as his understanding of the obligations of an oath. As many of these matters cannot be photographed into the record, the decision of the trial judge will not be disturbed on review, unless from that which is preserved it is clear that it was erroneous.' . . .

" . . . In the present case, the trial judge had the little girl before him and could judge of her intelligence. After all, the personal observation of a child of tender years furnished the safest guide to its ability to testify, and we are of opinion

that the trial judge did not abuse his discretion in permitting the little girl to testify."

In *Logston v. State*, 50 Tenn. 414, p. 419, (1872), the court made these comments: "James Galloway, a witness, about eight years of age, was objected to because of his tender years and for want of proper instruction. The court asked the witness if he knew what would become of him if he swore a lie? He said, 'Yes; the bad man will get me.' He was then asked who told him so. He said his mother. While, as a general rule, it might have been proper to have further tested the witness, yet, in view of his remarkably intelligent testimony, we are satisfied the manner of the child was of a character to satisfy the court of his capacity and instruction, and justified the brevity of examination by the court. The sensible answers make it clear that the witness understood sufficiently the nature of an oath and had a well defined idea of future rewards and punishments. His candor in speaking of his testimony, given on former trials, discovers an honesty the absence of which in many older and more mature persons, is to be regretted."

■ We have reviewed the testimony of the young witness. It would be unnecessarily burdensome to repeat this testimony and it is sufficient to say that direct and cross-examination comprised approximately forty pages of the record. She demonstrated an excellent ability to recall the events which occurred with specificity, and to articulate the circumstances and events which occurred. We are satisfied with her intelligence, and her ability to recall and relate accurate impressions of the facts to which her testimony related, as well as her obvious candor in responding to the questions put to her. We are equally satisfied with her sensitivity to the obligation to tell the truth under oath. We find defendant's complaint to be without merit.

■ Defendant asserts he was entitled to a judgment of acquittal on the charge of "carrying a pistol with intent to go armed", or in the alternative this offense should have been merged with the greater offense of homicide with a pistol. We disagree.

["The constitutional guarantee against double jeopardy .... seems both one of the least understood and, in recent years, one of the most frequently litigated provisions of the Bill of Rights . . ." *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), Rehnquist, J., dissenting. With all due deference to this truism the majority opinion in *Whalen*, supra, speaks to the issue in a fashion which clarifies some of the confusion evident in this case. The Court's opinion makes it clear that the Legislature has the power to authorize cumulative punishment for a defendant convicted on charges of felony murder and an underlying predicate felony without offending the double jeopardy provisions of the constitution in a multiple punishment case. 100 S.Ct. 1432, p. 1441, Blackman, J., concurring. The majority opinion succinctly sets out the rule under the double jeopardy clause as previously stated by that court in a number of cases:

" . . . The Fifth Amendment guarantee against double jeopardy protects .... 'against multiple punishment for the same offense', *North Carolina v. Pearce*, 395 U.S. [711] at 717, 89 S.Ct. [2072] at 2076 [23 L.Ed.2d 656] (footnote omitted). But the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishment the Legislative Branch has authorized. (Citations omitted).

It is not at all uncommon, for example, for Congress or a state legislature to provide that a single criminal offense may be punished both by a monetary fine and by a term of imprisonment. In that situation, it could not be seriously argued that the imposition of both a fine and a prison sentence in accordance with such a provision constituted an impermissible punishment. But if a penal statute instead provided for a fine *or* a term of imprisonment upon conviction, a court could not impose both punishments without run-

ning afoul of the double jeopardy guarantee of the Constitution. (Citations omitted). . . . ."

"The double jeopardy clause at the very least precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so. The Fifth Amendment guarantee against double jeopardy embodies in this respect simply one aspect of the basic principle that within our federal constitutional framework the legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the Congress. (Citations omitted). If a federal court exceeds its own authority by imposing multiple punishments not authorized by Congress it violates not only the specific guarantee against double jeopardy, but also the constitutional principal of separation of powers in a manner that trenches particularly harshly on individual liberty."

Although the same rule is imposed upon the states through the due process provisions of the Fourteenth Amendment, there is yet another reason why the charge of "carrying a pistol" should not have been merged and defendant was not entitled to an acquittal on that charge. It was not necessary to prove that defendant was carrying a pistol in violation of the law in order to make out the charge of homicide in this case. For instance, defendant might have been licensed and authorized to be armed and no proof of the secondary offense would have been necessary. Another example might be where the defendant disarmed his victim and then used the weapon to dispatch him. It is plain then that defendant's citations to authorities relative to the identity of offenses and the same evidence test are not relevant to the facts of this case. By defendant's own admission he had been carrying a pistol, which was the murder weapon, for some period of time prior to the homicide. There is no merit to defendant's assertion.

We note that the trial judge properly instructed the jury as to the provisions of T.C.A. § 39–4914, on enhanced punishment for the use of a firearm in the commission of a felony. That statute specifically provides that any punishment imposed under its provisions shall be in addition to, and run consecutively with, any other period of confinement. The trial judge adjudged one sentence of forty-five (45) years in this case. The verdict being in proper form, we correct and modify the judgment to specify that defendant's sentence for the offense of murder in the second degree is fixed at forty (40) years in the penitentiary, plus five (5) years as enhanced punishment, to be served consecutively, for committing the offense of second degree murder by use of a firearm. See *Cowan v. State*, 96 S.W. 973, 117 Tenn. 247 (1906).

The judgment is otherwise affirmed.

DUNCAN and SCOTT, JJ., concur.