# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 27, 2010 Session

## STATE OF TENNESSEE v. DAVID LYNN SISK

**Appeal from the Circuit Court for Cocke County**
**No. 0362      Ben W. Hooper, II, Judge**

---

**No. E2009-00320-CCA-R3-CD - Filed September 8, 2010**

---

A Cocke County Circuit Court jury convicted the defendant, David Lynn Sisk, of aggravated burglary, theft of property valued at more than $1,000 but less than $10,000, and theft of property valued at more than $10,000 but less than $60,000. The trial court determined that the defendant was a career offender and imposed a total effective sentence of 27 years' incarceration. In this appeal, the defendant challenges the sufficiency of the convicting evidence, claims that the indictments charging theft are multiplicitous, argues that the trial court erred in its jury charge, and contends that the trial court erroneously declared him a career offender. Because the evidence was insufficient to support the defendant's convictions, we reverse the judgments of the trial court and dismiss the charges in this case. To facilitate any further appellate review, we also conclude that the theft indictments were impermissibly multiplicitous, necessitating the dismissal of the defendant's conviction of theft of property valued at more than $1,000 but less than $10,000, and that the trial court erroneously classified the defendant as a career offender.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Reversed and Dismissed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which J.C. MCLIN, J., joined. D. KELLY THOMAS, JR., J., filed a separate opinion concurring in part and dissenting in part..

Wesley D. Stone, Knoxville, Tennessee (on appeal), and Brad Davidson, Newport, Tennessee (at trial), for the appellant, David Lynn Sisk.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; James B. Dunn, District Attorney General; and Joe Crumley and Brownlow Marsh, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

The convictions in this case arose from the burglary and theft of property from the home of Manit and Marina Subhakul sometime between March 27, 2006, and April 4, 2006.

Newport Police Department Detective George Grooms testified that he received a call from a Detective Carroll of the Cocke County Sheriff's Department that the sheriff's department had discovered a black BMW belonging to the victims that "had been wrecked and . . . had been burned and . . . had been hit several times with what looked to be a big pick." Detective Grooms sent Lieutenant Ronnie Landers to the victims' home to investigate, and Lieutenant Landers observed that "there was no one at home but . . . a window was broken out in the rear of the house." Detective Grooms testified that when he arrived at the residence, he found the back door open and "a large television set right at the back door," which appeared to have been taken from the master bedroom. Detective Grooms stated that entry into the house had been gained via a window in the bathroom and that the house "had been partially ransacked. . . . It had been searched somewhat thoroughly." Just inside the back door, officers found "a hand-rolled cigarette" that Detective Grooms collected and sent for deoxyribonucleic acid ("DNA") testing at the Tennessee Bureau of Investigation ("TBI") forensics laboratory in Knoxville. Detective Grooms recalled that although officers dusted the entirety of the house for fingerprints, they found no usable prints.

Detective Grooms testified that the defendant, who lived across the street and two houses down from the victims, became a suspect in the burglary by "word of mouth" and that, based upon this word of mouth, he obtained a search warrant to procure a DNA sample from the defendant. He said he sent the sample along with the cigarette, a beer bottle found in the yard, and DNA samples from other suspects to the TBI for comparative analysis. Detective Grooms testified that the only items recovered from the burglary and theft were the face of a small safe that had been in the bedroom and photographs of the victims' ancestors, both of which were found on the bank of the river in Newport. Detective Grooms recalled that "blunt trauma force had been used to dislocate the door from the body of the safe." He stated that the victims' delay in returning from a trip to Thailand hampered the investigation because officers were unsure what was actually missing from the residence.

Detective Grooms testified that on January 3, 2007, he and other officers went to the defendant's house to arrest him "around noon time, and . . . . as soon as we stopped in front of his house, he ran." Detective Grooms stated that it took officers 10 to 15 minutes to capture the defendant. After his arrest, the defendant signed a waiver of his rights but gave no statement.

TBI forensic scientist Jennifer Milsaps testified that there was no DNA evidence on the beer bottle recovered from the victims' residence but that there was DNA evidence on the cigarette butt. She stated that the probability of the DNA on the cigarette's belonging to someone other than the defendant "exceeds the current world population." During cross-examination, Agent Milsaps stated that it is impossible to tell the age of a DNA sample or of the DNA on the cigarette butt in this case.

Manit Subhakul testified that he and his wife left to visit relatives in Thailand on March 27, 2006, and that, on April 5 or 6, 2006, their son-in-law called to tell them that the house had been burglarized. Mr. Subhakul stated that he and his wife did not return immediately but instead waited to return on their scheduled departure date. He confirmed that the BMW, the door of the safe, and the photographs discovered on the riverbank belonged to him. He testified that the total value of all the items taken from his residence was "about forty thousand" dollars. He estimated that the 1992 BMW 250 could have sold for "about $16,000." During cross-examination, Mr. Subhakul acknowledged that he had often seen the defendant, who lived across the street, smoking in front of his house.

The State rested, and the defense opted not to present any proof. Based on the proof presented by the State, the jury convicted the defendant as charged. The defendant filed a timely motion for new trial and a timely notice of appeal.

In this appeal, the defendant contends that the evidence was insufficient to support his convictions, that the indictments charging theft were multiplicitous, that the trial court erred by refusing to give his requested jury instruction on circumstantial evidence, and that the trial court erroneously classified him as a career offender. We consider each claim in turn.

*I. Sufficiency of the Evidence*

The defendant claims that because the presence of a cigarette butt containing his DNA in the victims' residence was the only evidence linking him to the offenses, the evidence was insufficient to support his convictions. The State argues that the DNA on the cigarette butt and the fact that the defendant was a neighbor of the victims supports the convictions. We agree with the defendant.

We review the defendant's claim mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings

of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654. Although a criminal offense may be established exclusively by circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237 (Tenn. 1973); *Winters*, 137 S.W.3d at 654, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." *State v. Crawford*, 470 S.W.2d 610, 612 (Tenn. 1971). "In other words, '[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt.'" *State v. McAfee*, 737 S.W.2d 304, 306 (Tenn. Crim. App. 1987) (quoting *Crawford*, 470 S.W.2d at 613).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"Aggravated burglary is burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." T.C.A. § 39-13-403(a) (2003). Burglary, as is applicable in this case, is committed when a person "without the effective consent of the property owner . . . [e]nters a building and commits . . . a . . . theft." *Id.* § 39-14-402(a)(3). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103.

Here, the evidence adduced at trial established that sometime between March 27 and April 4, 2006, someone broke into the victims' home via a bathroom window and took items totaling more than $50,000, including the victims' 1992 BMW. Detective Grooms found a partially-smoked, hand-rolled cigarette on the floor near the kitchen door. DNA on the cigarette matched the defendant. Other than this match in DNA, no other proof linked the defendant to the crimes. None of the items taken from the victims' residence were discovered in the defendant's possession. No pawn tickets or other evidence was presented to suggest that the defendant had sold the items. No fingerprints were found in the house or on the BMW that matched the defendant. No one saw the defendant in or near the residence or driving the BMW. The victim acknowledged that he had seen the defendant smoking in front of his house. The mere presence of a single cigarette partially smoked by the defendant is neither sufficient to weave an inescapable web of guilt around the defendant, *see McAfee*,

-4-

737 S.W.2d at 306, nor "to exclude every other reasonable hypothesis save the guilt of the defendant," *see Crawford*, 470 S.W.2d at 612. Several plausible explanations for the presence of the defendant's cigarette inside the victims' residence come to mind, including that the cigarette butt was "tracked" into the residence.

Recently, in *State v. James Rae Lewter*, No. M2007-02723-SC-R11-CD (Tenn. June 4, 2010), our supreme court concluded that a jury could have reasonably inferred Lewter's guilt of burglarizing a dental office from the presence of a shirt containing his DNA. The court was careful to point out, however, that the DNA evidence was not the only evidence linking Lewter to the crime. In addition to the shirt, the co-defendant, a woman with whom Lewter had an intimate relationship, admitted committing the burglary and theft and insisted that she did not take Lewter's shirt to the scene. *Id.*, slip op. at 4. Further, the evidence showed that the female co-defendant could not have moved the stolen property on her own, that she would have needed a truck to take the items away, and that Lewter owned a truck. *Id.*, slip op. at 4-5. From all this evidence, our supreme court concluded that the jury could have inferred Lewter's guilt. *Id.*, slip op. at 6. Here, other than the presence of the defendant's DNA on the cigarette butt found inside the home, no other evidence corroborated the State's theory that the defendant committed the offenses in this case. Although this evidence might, arguably, be sufficient to suggest that the defendant was present in the victims' home at some point, there is simply no evidence from which the jury could have concluded that the defendant took several thousand dollars worth of property from the residence or that he entered with any other felonious intent. In consequence, we reverse convictions in this case and dismiss the charges against the defendant.

The standard of the prosecution's evidence in a criminal case of proof beyond a reasonable doubt is a critical component of the American system of justice. *Jackson*, 443 U.S. at 323-24. To remain vital, the concept must be honored by the courts not only in the abstract but also in the application to the facts of real cases. We hold that the State did not shoulder its burden to satisfy this important standard in this case.

## *II. Multiplicity*

The defendant next contends that the indictments charging him separately with theft of in excess of $10,000 worth of property from the victim's home and with the theft of the BMW from the victim's home were multiplicitous and that, as such, they violate the state and federal constitutional protections against double jeopardy.

Initially, the State asserts that the defendant waived our consideration of this issue by failing to include it in his motion for new trial. We disagree. Rule 3 of the Tennessee Rules of Appellate Procedure provides, in pertinent part, that

in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3(e). Relief from a double jeopardy violation, however, is not a new trial but a dismissal of the offending charges. *See, e.g., State v. Rocky Joe Houston*, No. E2009-00352-CCA-R9-CD (Tenn. Crim. App., Knoxville, Mar. 3, 2010) (dismissing charges against the defendant where "both our state and federal constitutional guarantees against double jeopardy prohibit a second prosecution of the defendant for any offense contained in the indictment in this case"); *State v. Epps*, 989 S.W.2d 742, 746 (Tenn. Crim. App. 1998) (vacating and dismissing multiplicitous conviction of attempted theft). In consequence, the defendant's failure to raise the multiplicity issue in his motion for new trial does not result in waiver of the issue. The defendant has raised the issue on appeal, and that is sufficient to secure plenary review.

The State also claims that "theft by illegally entering the victim's house and stealing items and theft by stealing the victim's vehicle are not the 'same offense.'" Again, we disagree.

Both the federal and state constitutions protect an accused from being "twice put in jeopardy of life or limb" for "the same offence." U.S. Const. Amend. V; Tenn. Const. art. 1, sec. 10. The state and federal provisions, which are quite similar in verbiage, have been given identical interpretations. *See State v. Waterhouse*, 8 Tenn. (1 Mart. & Yer.) 278, 284 (1827) ("[W]e did not feel ourselves warranted in giving [the double jeopardy provision of the state constitution] a construction different from that given to the constitution of the United States, by the tribunal possessing the power, (and of pre-eminent qualifications) to fix the construction of that instrument."). The United States Supreme Court has observed of the double jeopardy clause:

Our cases have recognized that the Clause embodies two vitally important interests. The first is the 'deeply ingrained' principle that 'the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the

possibility that even though innocent he may be found guilty.'
The second interest is the preservation of 'the finality of judgments.'

*Yeager v. United States*, — U.S. —, 129 S. Ct. 2360, 2365-66 (2009) (citations omitted).  To these ends, our state supreme court has "noted many times, three fundamental principles underlie double jeopardy:  (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense."  *State v. Denton*, 938 S.W.2d 373, 378 (Tenn. 1996) (citing *Whalen v. United States*, 445 U.S. 684, 688 (1980); *United States v. Wilson*, 420 U.S. 332, 343 (1975); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).  At issue in this case is the third of the three principles of double jeopardy, the "protection against multiple punishments for the same offense."

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  Thus, "separate statutory crimes need not be identical -- either in constituent elements or in actual proof -- in order to be the same within the meaning of the constitutional prohibition [against double jeopardy]."  *Brown v. Ohio*, 432 U.S. 161, 164 (1977) (citing 1 J. Bishop, *New Criminal Law* § 1051 (8th ed. 1892); Comment, *Twice in Jeopardy*, 75 Yale L.J. 262, 268-69 (1965)).  "Multiplicity concerns the division of conduct into discrete offenses, creating several offenses out of a single offense."  *State v. Phillips*, 924 S.W.2d 662, 665 (Tenn. 1996).  To determine whether offenses are multiplicitous, this court generally considers:

1. A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution;

2. If each offense charged requires proof of a fact not required in proving the other, the offenses are not multiplicitous; and

3. Where time and location separate and distinguish the commission of the offenses, the offenses cannot be said to have arisen out of a single wrongful act.

*Id.*  "Additional factors such as the nature of the act; the time elapsed between the alleged conduct; the intent of the accused, i.e., was a new intent formed; and cumulative punishment may be considered for guidance in determining whether the multiple convictions violate

double jeopardy." *Epps*, 989 S.W.2d at 745 (citing *Phillips*, 924 S.W.2d at 665). Of particular import in this case,

> [w]hether the acts of the defendant constitute several thefts or one single crime must be determined by the facts and circumstances of each case. If each taking is the result of a separate intent, each is a separate crime; however, where the takings are all pursuant to a single intent, there is but a single larceny.

*Id.* at 746.

In *Epps*, several items were taken from the victim's home and an automobile was taken from a shed outside the home during a burglary. The State charged Epps by separate counts with the theft of the items from inside the victim's home and the theft of the victim's automobile, and the defendant was convicted of theft and attempted theft on these counts. Finding as plain error that the convictions for theft and attempted theft violated principles of double jeopardy, we held that "[w]here several articles are stolen from the same owner at the same time and place, only a single crime is committed." *Id.* at 745-46. In this case, as in *Epps*, the theft of property from inside the victims' home and the theft of the BMW "arose from a single criminal episode, involved the property of one victim, and both occurred at the same location." *Id.* at 745. Moreover, adding the value of the BMW to the value of the items taken from inside the victims' home would not increase the grade of the theft offense charged in the first count of the indictment. In consequence, the indictments for theft of property valued at more than $10,000 but less than $60,000 and theft of property valued at more than $1,000 but less than $10,000 were multiplicitous, and the dual theft convictions violate double jeopardy principles. The defendant's conviction of theft of property valued at more than $1,000 but less than $10,000 must be reversed and the charge dismissed.

### III. Jury Instructions

The defendant next contends that the trial court erred by refusing to give his specially requested instruction on circumstantial evidence and by failing to instruct the jury on the doctrine of "mere presence." The State asserts that the defendant has waived our consideration of this issue by failing to raise the issue in his motion for new trial. Alternatively, the State submits that the jury instructions were proper. We agree with the State on both points.

As indicated, the failure to raise the issue of "jury instructions granted or

refused" in a motion for new trial results in waiver of plenary appellate review. *See* Tenn. R. App. P. 3(e). Pursuant to Rule 36(b) of the Tennessee Rules of Appellate Procedure, "an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial" where consideration of the error is "necessary to do substantial justice." Tenn. R. App. P. 36(b). Before an error may be so recognized, however, it "must be 'plain' and it must affect a 'substantial right' of the accused." *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). The word "'plain' is synonymous with 'clear' or equivalently 'obvious.'" *United States v. Olano*, 507 U.S. 725, 734 (1993) (citing *United States v. Young*, 470 U.S. 1, 16 n.14 (1985)). Authority to correct an otherwise "forfeited error" lies strictly "within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 732 (citations omitted).

In *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000), our supreme court adopted the definition of "substantial right" promulgated by this court in *Adkisson*. There, we held that "a 'substantial right' is a right of 'fundamental proportions in the indictment process, a right to the proof of every element of the offense, and is constitutional in nature.'" *Adkisson*, 899 S.W.2d at 639. Our supreme court also adopted *Adkisson's* five factor test for determining whether an error should be recognized plain:

> "(a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached;
> (c) a substantial right of the accused must have been adversely affected;
> (d) the accused did not waive the issue for tactical reasons; and
> (e) consideration of the error is 'necessary to do substantial justice.'"

*Smith*, 24 S.W.3d at 282 (quoting *Adkisson*, 899 S.W.2d at 641-42). "[A]ll five factors must be established by the record before this court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* at 283. To be reviewable as "plain," the error "must [have been] of such a great magnitude that it probably changed the outcome of the trial.'" *Id.* (quoting *Adkisson*, 899 S.W.2d at 642) (alteration in original). Finally, "the burden of establishing entitlement to relief for plain error is on the defendant claiming it." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004).

Before the trial began, the defendant asked the trial court to instruct the jury on the treatment of circumstantial evidence as follows:

1.    In order to convict on circumstantial evidence alone, the facts and circumstances must be so closely interwoven and connected that the finger of guilt is pointed unerringly at the [d]efendant and the [d]efendnt alone.  A web of guilt must be woven around the [d]efendant from which he cannot escape and from which facts and circumstances the jury could draw no other inference save the guilt of the [d]efendant beyond a reasonable doubt. . . .
We cannot speculate a [d]efendant into the penitentiary . . . [.]

2.    [Where evidence is entirely circumstantial] there must be an evidentiary basis upon which the jury can exclude every other reasonable theory or hypothesis except that of guilt.

3.    Probable guilt, however, is not enough.

4.    In convictions such as these, where the evidence is entirely circumstantial, the jury must find that the proof is not only consistent with the guilt of the accused, but inconsistent with his innocence.  There must be an evidentiary basis upon which the jury can exclude every other reasonable theory or hypothesis except that of guilt.

The defendant also asked the trial court to instruct the jury on mere presence:  "Even under the theory of criminal responsibility for the acts of another, mere presence during the commission of a crime is not enough to convict."  The defendant later abandoned his request for a mere presence instruction, but he reiterated his desire for the specially requested circumstantial evidence instruction.  The trial court denied the request, ruling that the pattern jury instruction on circumstantial evidence was "adequate, if not more than adequate, and in many instances, is almost verbatim with what's contained in the request."

An accused's constitutional right to trial by jury, *see* U.S. Const. amend VI; Tenn. Const. art. 1, § 6, encompasses a right to a correct and complete charge of the law, *see State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990).  The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *see Teel*, 793 S.W.2d at 249; *see also* Tenn. R. Crim. P. 30.  When examining the propriety of jury instructions, however, a reviewing court must review the

challenged instruction in the context of the entire charge rather than in isolation. *See Sandstrom v. Montana*, 442 U.S. 510, 527 (1979) (Rehnquist, J., concurring); *see also Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."); *State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997).

The legal accuracy of the trial court's instructions is a question of law entitled to de novo review. *See Troup v. Fischer Steel Corp.*, 236 S.W.3d 143, 149 (Tenn. 2007). The propriety of a given instruction is a mixed question of law and fact to be reviewed de novo with a presumption of correctness. *Carpenter v. State*, 126 S.W.3d 879, 892 (Tenn. 2004); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

*A. Circumstantial Evidence Instruction*

Here, the trial court instructed the jury as follows:

> Circumstantial evidence is all the testimony and exhibits which give you clues about what happened in an indirect way. It consists of all the evidence which is not direct evidence. Do not assume that direct evidence is always better than circumstantial evidence. According to our laws, direct evidence is not necessarily better than circumstantial evidence. Either type of evidence can prove a fact if it is convincing enough. A defendant may be convicted on direct evidence, circumstantial evidence, or both. When the evidence is entirely circumstantial, then before you would be justified in finding the defendant guilty, you must find that all the essential facts are consistent with the theory of guilt, and the facts must exclude every other reasonable theory except that of guilt.

This language is identical to Tennessee Pattern Jury Instruction 42.03(a) and is an accurate statement of the law. Moreover, as the trial court observed, the given instruction conveyed the substance of the defendant's requested charge without the unnecessary repetition. *See State v. Gilley*, 297 S.W.3d 739, 766 (Tenn. Crim. App. 2008) ("While the defendant may request special instructions, jury instructions are sufficient where they adequately state the law."). The trial court's refusal to provide the requested instruction was not error, much less plain error.

-11-

## B. Mere Presence

On appeal, the defendant claims that the trial court erred by refusing to instruct the jury on the weight of his mere presence. The record establishes, however, that defense counsel abandoned the request for this charge and, in fact, asked the trial court not to provide the instruction. Because we cannot say that the accused did not waive this issue for tactical reasons, we likewise cannot say that the trial court's failure to provide the requested charge rises to the level of plain error.

## IV. Sentencing

Lastly, the defendant claims that the trial court erred by classifying him as a career offender for his Class C felony convictions because he does not have the requisite number of previous felony convictions to qualify for career offender sentencing. The State concedes that the defendant was improperly classified as a career offender.

When considering challenges to the length and manner of service of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In making its sentencing decision, the trial court must consider:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

The jury convicted the defendant of two Class C felonies and one Class D felony. The presentence investigation report established that the 34-year-old defendant had some 36 prior convictions, including 12 Class E felony convictions. Tennessee Code Annotated section 40-35-108 provides, in pertinent part, as follows:

(a) A "career offender" is a defendant who has received:

(1) Any combination of six (6) or more Class A, B or C prior felony convictions, and the defendant's conviction offense is a Class A, B or C felony;

(2) At least three (3) Class A or any combination of four (4) Class A or Class B felony convictions if the defendant's conviction offense is a Class A or B felony; or

(3) At least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony.

T.C.A. § 40-35-108(a). With 12 prior Class E felony convictions, the defendant qualified as a career offender for purposes of his Class D felony theft conviction, a conviction that has been vacated as violative of double jeopardy principles. He did not, however, have the requisite number of predicate felony convictions to qualify as a career offender for purposes of his Class C felony convictions. As to these convictions, the defendant is a Range III, persistent offender. *See id.* § 40-35-107(a) ("A 'persistent offender' is a defendant who has received . . . [a]ny combination of five (5) or more prior felony convictions within the conviction class or higher, or within the next two (2) lower felony classes . . . ."). Had we

-13-

not determined that the evidence was insufficient to support the defendant's convictions, we would remand the case for resentencing.

*Conclusion*

Because the evidence presented at trial was insufficient to support the defendant's convictions of two counts of theft and aggravated burglary, the judgments of the trial court are reversed, the convictions are vacated, and the charges are dismissed. To facilitate further appellate review, we also conclude that the defendant's conviction of theft of property valued at more than $1,000 but less than $10,000 violates principles of double jeopardy. As a result, that conviction must be reversed and dismissed. Finally, the trial court erroneously classified the defendant as a career offender for purposes of his Class C felony convictions.

_____
JAMES CURWOOD WITT, JR., JUDGE